IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Russell K. Hill #L3506 Petitioner

V. Cause No. ______

Nancy Pelosi (Speaker of the U.S. House of Representatives)

Case: 1:21-cv-03289
Assigned To : Unassigned
Assign. Date : 12/13/2021
Description: Habeas/2255 (G-DECK)

# PETITION FOR HABEAS CORPUS § (28 U.S.C. § 2241)

PETITIONER HILL WOULD FILE THIS WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C.S. § 2241 (c)(3), AND REQUEST A PROPER APPEAL BY THE MISSISSIPPI SUPREME COURT AND IMMEDIATE RELEASE FROM FEDERAL STATUTORY CUSTODY UNDER § 5 OF THE VOTING RIGHTS; VIA RETROACTIVE COMPLIANCE WITH PROPER PROTOCOL UNDER § 5 OF THE VOTING RIGHTS ACT. HILL FIRMLY ASSERTS THAT HIS CURRENT INCARCERATION IS FAIRLY ATTRIBUTED TO [D]EREGULATION BY THE UNITED STATES OR THE [O]MISSION OF THE PRESCRIBED § 5 RENASCENCE MONITORING OF THE STATE OF MISSISSIPPI UNDER THE APPLICABLE SANCTIONS OF THE VOTING RIGHTS ACT. THE UNITED STATES HAS FAILED TO PLACE IN RECORD THE RESULTS OF § 5 INVESTIGATIONS OR TO INTERPOSE OBJECTIONS TO THE STATE'S UNCONSTITUTIONAL LAWS OR BLACK CODES SUBMITTED BY THE STATE OF MISSISSIPPI TO THE UNITED STATES FOR § 5 CENSORSHIP, AND SUCH IS E CONTRA TO THE PROSCRIPTIONS OF THE FIFTEENTH AMENDMENT. U.S. Const. 15th Amend.

THE OMISSIONS OR DEREGULATION BY SEVERAL U.S. ATTORNEY GENERALS IN OUTRIGHT DEFIANCE OF CONGRESSIONAL MANDATES UNDER THE VOTING RIGHTS ACT ("VRA") FROM, BUT NOT LIMITED TO, 1983 UNTIL THE "TOKEN ONE", HAVING FULL KNOWLEDGE OF THESE AND OTHER COMPLAINTS AGAINST THE STATE OF MISSISSIPPI; RELEASED ALL STATES SUBJECT TO VRA RESTRICTIONS FROM ITS SANCTIONS, VIA EXECUTIVE ORDER, IRONICALLY DECLARING THAT THOSE STATES HAD DONE A FINE JOB OF REFORMING... HERE, THE CHALLENGED OMISSIONS OR DEREGULATION ARE A THREAT

21-7

TO NATIONAL SECURITY AS THEY "THREATEN THE SUPREMACY OF THE UNITED STATES OR ENHANCES STATE POWER TO THE THE DETRIMENT OF FEDERAL SOVEREIGNTY," Cuyler v. Adams, 449 U.S. 433, 451 (1981), AS WELL AS, REINSTATED COINTELPRO BY BOLSTERING SOVEREIGN COMMISSION LIKE TACTICS IN THE STATE, BY REMOVING ANY INCENTATIVE TO COMPLY WITH THE LAW OF THE UNION. THE DEREGULATION "UNCONSTITUTIONALLY ENCOURAGED" THE STATE TO REDUX TO PRE-RECONSTRUCTION ERA SENTIMENTS, AND TO REALIGN WITH THE STATE'S PRIMARY REASONING FOR RE-WRITING THE MISSISSIPPI CONSTITUTION IN 1890, WHICH WAS "TO DISENFRANCHISE BLACKS" U.S. v. Mississippi, 380 U.S. 128, 131-136 (1965), AND TO PREVENT OR "RESTRICT THE NEGRO FRANCHISE AND TO ESTABLISH AND PERPETUATE WHITE POLITICAL SUPREMACY... IN MISSISSIPPI" Id at 132.[1]

THE U.S. HOUSE OF REPRESENTATIVES IS KNOWN AS "THE PEOPLE'S HOUSE", AND PELOSI IN HER CAPACITY AS SPEAKER OF THE HOUSE OF REPRESENTATIVES DURING THE IMPEACHMENT OF PRESIDENT TRUMP, STATED THAT, "ONE OF THE CHIEF RESPONSIBILITIES OF CONGRESS IS OVERSIGHT OF THE EXECUTIVE BRANCH." YET THE DEPARTMENT OF JUSTICE ("DOJ") FAILED TO FULFILL ITS STATUTORY OBLIGATIONS UNDER THE VRA FOR OVER FORTY (40) YEARS -- SUCH IS STRONG EVIDENCE THAT CONGRESS IS COMPLICIT IN DEREGULATION UNDER THE VRA.

FN-1

In Federalist No. 39, Madison stated, "The House of Representatives will derive its power from the people of Americans. The Senate, on the other hand, will derive its power from the States, as political and co-equal societies; and these will be represented on the principle of equality in the Senate.

ESPECIALLY EGREGIOUS ON BEHALF OF SPEAKER Pelosi, BECAUSE HILL OFFICIALLY COMPLAINED TO THEN, MINORITY LEADER PELOSI AND PRESENTED EVIDENCE IN SUPPORT THAT MISSISSIPPI HAD A STATEWIDE PRACTICE OF FALSIFYING CRIMINAL INDICTMENTS. A PRACTICE WHICH HILL INFORMED THEN CONGRESSMAN GENE TAYLOR OF, BUT TAYLOR FAILED TO ACT. BUT INSTEAD OF ACTING ON HILL'S COMPLAINT, PELOSI USED THE COMPLAINT AS LEVERAGE TO SHOCK THE POLITICAL WORLD, BY CONVINCING HER LONG-TIME RIVAL GENE TAYLOR (Rep. OF Mississippi) TO SUPPORT AND VOTE FOR Pelosi AS SPEAKER OF THE HOUSE, THEREBY IMPERMISSIBLY INFLUENCING PELOSI'S SUCCESSFUL ELECTION TO SPEAKER OF THE HOUSE, WITH IMPUNITY.

IT APPEARS THAT CONTRARY TO SPEAKER PELOSI'S WORDS, SOMEONE IS, "ABOVE THE LAW." THE DERELECTION OF DUTY BY A GOOSE IS NO LESS THAN THAT BY A GANDER, AS IT PERTAINS TO LIABILITY FOR

THE FRUITS OF ONE'S ILLEGALITY.

HISTORY REFLECTS THAT THE ENTIRE CONGRESS WAS SHOCKED AT TAYLOR'S ABOUT FACE IN THE SUPPORT OF PELOSI FOR SPEAKER OF THE HOUSE. PELOSI'S INACTION VIOLATED HER OATH OF OFFICE AS A CLEAR DERELECTION OF DUTY TO INVESTIGATE THE NONCONCLUSORY ALLEGATIONS. FRANKLY, PELOSI'S WILLFUL BLINDNESS THREW THE BLACK VOTERS OF MISSISSIPPI UNDER THE BUS. AFTER ALL, ACCORDING TO THE CONTINENTAL CONGRESS THE LOWER HOUSE WAS DESIGNED TO BE CLOSEST TO THE VOTERS, WHO ELECTED IT EVERY TWO YEARS. IT WOULD BE, ACCORDING TO GEORGE MASON (VIRGINIA), "THE GRAND REPOSITORY OF THE DEMOCRATIC PRINCIPLE OF GOVERNMENT." HOUSE MEMBERS SHOULD "SYMPATHIZE" WITH THEIR CONSTITUENTS; SHOULD THINK AS THEY THINK, & FEEL AS THEY FEEL; AND FOR THESE PURPOSES SHOULD EVEN BE RESIDENTS AMONG THEM."

IN SHORT, THEN MINORITY LEADER PELOSI'S ACTIONS PERSONALLY ENDORSED THE REBEL GOVERNMENT OF MISSISSIPPI AND ITS NATIONALIST FLAG (Rebel), WITH [FULL] KNOWLEDGE OF THE DETRIMENTAL FACT THAT, IN SPIRIT, MISSISSIPPI SUCCEEDED FROM THE UNION AND JOINED THE CONFEDERACY OF THE "STATE OF NORTH AMERICA" IN 1990, WHEN MISSISSIPPI REPEALED ITS STATE AND JURISDICTIONAL BOUNDARIES UPON WHICH ITS STATEHOOD IS CONTINGENT UNDER THE MISSISSIPPI ENABLING ACT; AND HAVING [FULL] KNOWLEDGE THAT DUE TO THE "REBELLION OF 1990" [ALL] FEDERAL OBLIGATIONS AND CLAIMS FOR FEDERAL FUNDING AND FEDERAL GRANTS, BEING SUBMITTED BY POST 1990 MISSISSIPPI ARE FALSE CLAIMS, "HELD ILLEGAL AND VOID", U.S. CONST. AMEND, 14 § 4

IN SO DOING Rep. Pelosi ACKNOWLEDGED HER ROLE AS A "HUB" IN A SEDITIOUS CONSPIRACY BY NATIONALIST IN THE MAINTENANCE OF "GLOBAL WHEEL-CONSPIRACY OF ECONOMIC GIFTING, DESIGNED TO GIVE "BLACK LIVES FOR WHITE-VOTER STRENGTH" OR "PLANTATION POWER" (ONE WHITE, MANY VOTES), THROUGH DEREGULATION OF VRA LAWS (Federal) THAT ALLOWED:

1. THE STATE OF MISSISSIPPI TO ENACT LAWS THAT HAVE AN ADVERSE IMPACT ON BLACK VOTER STRENGTH AND BLACK REPRODUCTION IN MISSISSIPPI.

2. CRYPTIC PROSECUTIONS AND CRIMINAL APPEALS BY A DE FACTO COURT OF APPEALS (STATE), DESIGNED AND IMPLIMENTED TO LESSEN THE BURDEN OF THE REBEL GOVERNMENT OF MISSISSIPPI TO PROVE CRIMES BEYOND A REASONABLE DOUBT.

3. RECIPROCAL FEDERAL LEGISLATION SUCH AS THE 1995 CRIME BILL, THE PLRA, AEDPA, ETC. ETC., WHICH FURTHER LESSEN THE BURDEN OF TOTALITARIAN STATES LIKE MISSISSIPPI TO PROVE

CRIMES BEYOND A REASONABLE DOUBT, IN PART, DUE TO THE TROLLEYOLOGY OF A COLLABORATIVE SPIRIT AND THE LEGISLATIVE FIAT OF PROCEDURAL BARS OR STATUTORY CUSTODY UNDER 28 U.S.C.A. §2241 THAT PREVENTS THE MERITS OF PRISONER CLAIMS FROM EVER BEING HEARD. THEREBY, REMOVING ANY INCENTATIVE STATES LIKE MISSISSIPPI MIGHT OF HAD TO BE FAIR TO BLACK AMERICANS. SUCH A "COOPERATIVE PROGRAM OF WHITE POWER" OR "GOLDEN PARACHUTE" IS UNCONSTITUTIONAL ENCOURAGEMENT TO THE "FEDERAL INSTRUMENTALITY" OF THE "REBEL GOVERNMENT OF NEW MISSISSIPPI," ESTABLISHED IN 1990 (BY REPEAL OF BOUNDARIES) IN THE SENSE OF [P]ARTNERSHIP BETWEEN THE UPPERMOST FEDERAL AND STATE OFFICIALS INVOLVED IN A COMMON ENDEAVOR FOR "WHITE SUPREMEACY", OR "PLANTATION POWER", OR "VOTER-SLAVE STATES"

FN-2

Totalitarian - of or having to do with a government controlled by one political group which suppresses [ALL] opposition, often with force[e], and which controls many aspects of its citizens lives. Ref. Scott's Advanced Dictionary

Totalitarian - of, relating to, or advocating a political regime based on subordination of the individual to the State and strict control of [ALL] aspects of life especially by coercive means. ref. Merriam Webster Dictionary

THIS REDUX TO THE "HANDS-OFF POLICIES" OF THE PRE-1965 ERA POLITICS, MEANS THAT FEDERAL OFFICIALS IN CONGRESS AND THE DOJ CHARGED WITH ENSURING STATE COMPLIANCE WITH THE 15th, 19th, and 26th AMENDMENT OF THE U.S. CONSTITUTION, IN THIS INSTANCE, VIA FEDERAL REGULATIONS UNDER THE VRA —— HAVE DEVELOPED AN ATMOSPHERE OF COOPERATION. IN WHICH THEY HAVE MADE CONCESSIONS TO THEIR STATE COUNTERPARTS UNDER THE VRA. IN ESSENCE, FEDERAL REGULATORS DID NOT PASS UPON LAWS SUBMITTED BY THIER STATE COUNTERPARTS UNDER VRA RESTRICTIONS AS AN INSPECTOR, BUT AS A [C]OOPERATOR. AS A RESULT FEDERAL REGULATORS REMAINED SILENT, IN RECORD, OF MISSISSIPPI LAWS SUBMITTED UNDER VRA RESTRICTIONS, THIS SILENT OR SUB SILENTO FEDERAL ATTITUDE ENABLED MISSISSIPPI TO ENACT LAWS THAT, IN EFFECT, DISENFRANCHISE ITS BLACK POPULATION, BY PLANTATION POWER POLITICS (HANDS-OFF). PRIMA FACIE THE SUB-SILENTO ATTITUDE IS TO BE CONSIDERED ACQUIENCE AT THIS THRESHOLD, OF THESE PROCEEDINGS OR "AS TRUE" THOUGH NONCONCLUSORY —— THAT IS, "IF THE "CENTER HOLDS""?

HERE, THERE IS A GOOD ARGUMENT FOR "TERM-LIMITS" IN CONGRESS, LIKE UNTO THOSE OF THE CHIEF

EXECUTIVE OFFICER OF THE UNITED STATES. AS IT FIRMLY APPEARS THAT TRITE POLITICIANS SUCH AS RESPONDENT PELOSI, IN COMBINATION AND CONSPIRACY WITH GENE TAYLOR AND MANY OTHERS DURING HER EXTENSIVE TENURE IN THE "PEOPLE'S HOUSE", HAVE INCREASED THE POWER OF REBEL-RACIST STATES SUCH AS MISSISSIPPI, CREATING A "SKUNK NATION (N2)"[3], AND HAVE COLLECTIVELY PERPETRATED THROUGH THIER ACTS AND OMISSIONS UNDER THE VRA, WHAT RANKS AS ONE OF THE LARGEST AND MOST SEDITIOUS VIOLATIONS OF SUFFRAGE RELATED TO BLACK GENOCIDE IN THE HISTORY OF THE AMERICAN LEGAL SYSTEM. ALL, IN A SCHEME CHOOSING TO OR TROLLEYOLOGY TO TREAT THE CIVIL AND CRIMINAL RIGHTS OF BLACKS IN REBEL STATES LIKE MISSISSIPPI, AS COMMODITIES THAT COULD BE TRADED FOR THE WHITE-VOTER STRENGTH NECESSARY TO ESTABLISH AND TO MAINTAIN THEIR COMMON-GOAL OF THE STATE OF NORTH AMERICA OR HEGEMONY WITHOUT BOUNDARIE[S]. [HILE PELOSI], AMERICAN NATIONALIST/SOCIALIST LEADER; HITLER WOULD BE EXTREMELY JEALOUS OF YOUR ACCOMPLISHMENTS ON BEHALF OF YOUR SHARED MASTER, TO WHOM YOU PRAY.

FN-3.

U.S. ex Rel. Stevens v. State of Vt. Agency of Natural Resources, 162 F.3d 195, 225 (2nd Cir 1998) (National Political Process)

Local interest make themselves felt at all stages of the National political process. The election of senators and representatives from the states ensures the states' influential position as "strategic yardsticks for the measurement of interest and opinion; the special centers of political activity the separate geographical determinants of national as well as local politics," Herbert Wechsler, The Political Safeguards of Federalism..., 54 Colum. L. Rev. 543, 546 (1954); see also Larry Kramer, Understanding Federalism, 47 Vand. L. Rev. 1485, 1547 (1994) ("The simple existence of independent states [within] the larger nation affects the dynamic of American politics ... by encouraging political movements to develop along state lines and to utilize machinery of state government to achieve their goals. Individual Congressperson's voting decisions are influenced by the [p]references of their constituents and by the needs of their home states as well as by national interest.... Members of Congress, in their individual capacity and as members of congressional committees frequently intervene on behalf of their states and home communities to influence the policy positions and particular decisions

of administrative agencies charged with implementing federal statutes.... *226 The federal administrators whose help is enlisted by congressional representatives for the purpose of preventing or facilitating administrative action gain influence from the process. Not only are potential mistakes avoided, but a quid pro quo relationship develops between congressional representatives and the administrative agencies they seek to influence... "A favorable impression of an agency's responsiveness may enlist a valuable congressional ally. [F]avors done for congressmen may provide a [r]eceptive congressional ear to hear the agency's point of view in Congress.

4) DEREGULATION UNDER THE VRA IN COMBINATION WITH FEDERAL RECIPROCAL LEGISLATION, FEDERAL ADOPTION OF MISSISSIPPI'S BLACK STAGNATION MODEL AND THE EFFECTS OF THE CONGRESSIONAL QUID PRO QUO OF "GET TOUGH ON CRIME" AMOUNT TO A IMPERMISSIBLE COOPERATIVE PROGRAM; THEREBY "INCREASING THE POLITICAL POWER" OF THE REBEL GOVERNMENT OF MISSISSIPPI AND BREACHING NATIONAL SECURITY BY "INTERFERING WITH THE JUST SUPREMACY OF THE UNITED STATES." Virginia v. Tennesse, 148 U.S. 503, 13 S.Ct. 738, 37 L.Ed 537 (1893)

I SAY A BREACH OF NATIONAL SECURITY, IN PART, BECAUSE MISSISSIPPI IS NOT THE ONLY STATE IN THE UNION THAT HAS REPEALED ITS BOUNDARIES, IN FACT THERE IS A COLLECTIVE AGREEMENT AMONG SEVERAL STATES IN THE UNION WHICH HAVE REPEALED THEIR AUTHORIZED BOUNDARIES TO FORM A "CONFEDERATE NATION" WITHIN THE BOUNDARIES OF THE TRUE UNITED STATES (PRE NAFTA). THIS MULTISTATE CONFEDERACY AGREEMENT IS SUBJECT TO THE COMPACT CLAUSE (ARTICLE I §10), WHICH CLEARLY PROHIBITS A CONFEDERACY UNDER cl.1, AND REQUIRES THAT STATES MAY NOT ENTER INTO "AGREEMENTS" OR COMPACTS", ABSENT CONGRESSIONAL CONSENT.

HERE, CONGRESS HAS EXPRESSED CONSENT TO THE MULTISTATE CONFEDERACY COMPACT BY INACTION OR CONGRESSIONAL SILENCE UNDER THE VRA IN THE COMPACT STATE OF MISSISSIPPI, BECAUSE THE DOJ HAS BEEN DELEGATED AUTHORITY UNDER VRA TO EXERCISE THE "POLITICAL JUDGMENT" OF CONGRESS UNDER THE VRA TO "ASSIMILATE" STATE LAWS UNDER CONGRESS'S

"WAR ON CRIME" AND "GET TOUGH ON CRIME" POLICIES, AS WELL AS, UNDER THE FEDERAL FALSE CLAIMS ACT (FCA), ETC, ETC. THUS, THE FEDERAL ASSIMILATION OF THOSE COMPACT STATE LAWS, ARE WELL WITHIN THE ZONE OF INTEREST UNDER § 4 OF THE 14TH AMENDMENT, AS IT PERTAINS TO THE BURDEN OF U.S. TAXPAYERS ASSUMING THE DEBTS OF, AND UPHOLDING FINANCIAL OBLIGATION TO THE COMPACT STATES. AFTER ALL, THE ORIGIN AND HISTORY OF THE MULTISTATE CONFEDERACY COMPACT ARE [I]NTIMATELY RELATED AND BOUND UP WITH THE HISTORY OF MISSISSIPPI TO DISENFRANCHISE AND TO STAGNATE THE BLACK POPULATION, IN AN EFFORT TO GAIN POWER THROUGH WHITE SUPREMACY. PRIMA FACIE IT APPEARS THAT CONGRESS HAS SILENTLY ACQUIESCED COINTELPRO LIKE ACTIVITY AND TREATIES, ALLIANCES OR CONFEDERATIONS BY THE COMPACT STATES AND WITH A "FOREIGN POWER," IN DEFIANCE OF THE "SEPARATION OF POWERS" DOCTRINE AND OF THE "COMPACT CLAUSE"

FN-4

U.S. Steel Corp. v. Multistate Tax Comission, 434 U.S. 452, 488, 98 S.Ct. 799 (1978) (It cannot be disputed that the action of over 20 States, speaking through a [s]ingle, establish[ed] authority, carries an influence far stronger than would 20 separate voices.)

FN-5

U.S. Steel Corp, supra, at 485, 819 (Congressional consent to an interstate compact may be expressed in several ways. In the leading case of Virginia v. Tennesse, 148 U.S. 503, 13 S.Ct. 728, 37 L.Ed. 537 (1893), congressional consent to a compact setting a boundary was inferr[ed] from years of acquiescence to that line by Congress in delimiting federal judicial and electoral districts. Id at 522, 735 Congressional consent may also be given in advance of the adoption of any specific compacts, by general consent Resolutions... Congress does not pass upon a submitted compact in the manner of a court of law deciding a question of constitutionality. Rather

Rather, the requirement that Congress approve a compact is to obtain its [political judgment]: Is the agreement likely to interfere with federal activity in the area, is it likely to disadvantage other States to an important extent, Is it a matter that would better be left untouched by state and federal Regulation? It comporeswith the purpose of seeking political consent Congress affords that such consent may be expressed in ways as informal as tacit recognition. ... A statute-of-limitations type of approach to the necessary duration of Congressional silence before consent may be inferred has been suggested by ... The National Associations of Attorneys General (NAAG) has also declared its support for the use of [i]nformal procedures. F. Zimmermann & M. Wendell, The Law and Use of Interstate Compacts 35 (1961))

FURTHER, THE DEREGULATION UNDER THE VRA OR THE "FEDERAL HANDS-OFF" POLICY DIRECTLY DEPRIVED BLACK VOTERS IN MISSISSIPPI OF THE VOTER-STRENGTH TO ELECT BLACKS TO KEY STATE POSITIONS SUCH AS THE OFFICES OF GOVENOR, ATTORNEY GENERAL, etc, etc. SINCE THE ENACTMENT OF THE VRA IN 1965 THE BLACK POPULATION IN MISSISSIPPI HAS BEEN STAGNATED AT ROUGHLY 37% TO THIS PRESENT DAY, DUE TO DELIBERATE DEREGULATION BY FEDERAL OFFICIALS UNDER THE VRA IN THE MAINTENANCE OF WHITE SUPREMACY OR PLANTATION POWER IN MATTERS RELATIVE TO GENOCIDE. HUMAN RIGHTS ACT OF 2009. THE EFFECTS ARE COINTELPRO AND MISSISSIPPI SOVEREIGN COMMISSION LIKE RESULTS, DESIGNED SPECIFICALLY TO COMBAT OR REVERSE THE SENTIMENTS AND INTENTS OF THE VRA AND OF THE CIVIL RIGHTS ACT OF 1965. AFTER ALL THE COOPERATIVE DEREGULATION AGREEMENT BETWEEN FEDERAL AND STATE GOVERNMENTS TO UNDERTAKE A PROJECT TO ASSIST PELOSI'S CABAL IN DEVELOPING GLOBAL MARKETS AND FOREIGN INVESTMENTS (E.U., IMF NAFTA, etc. etc.) ALSO YIELDED RECIPROCAL LEGISLATION SUCH AS THE PLRA AND AEDPA, WHICH, IN EFFECT, TERMINAT[ED] PARENS PATRIAE AND NULLIFIED THE CIVIL RIGHTS ACT OF 1965, AS IT PERTAINS TO PRO-SE PRISONER LITIGANTS, THEREBY LESSENING THE BURDEN OF MEMBER STATES LIKE MISSISSIPPI TO PROVE CRIMES

21-14

BEYOND A REASONABLE DOUBT, AND SPARKING CASE OR CONTROVERSY HEREIN UNDER Article III AS STATUTORY (FEDERAL) CONFINEMENT BY ASSIMILATION. CLEARLY, THIS IS ALARMING, DUE TO THE FACT THAT THE PLRA AND THE AEDPA WERE ADOPTED AND PROMULGATED BY THE FEDERAL GOVERNMENT IN 1995 TO IMPLEMENT THE MISSISSIPPI STAGNATION MODEL ("MSM"), WHICH ACCORDING TO THE 2010 CENSUS -- SUCCESSFULLY STAGNATED THE BLACK POPULATION IN THE UNITED STATES, FOR THE FIRST TIME IN AMERICAN HISTORY. SEE Hill v. Hillary Rodham Clinton, CAUSE NO. 16-CV-153, DISTRICT OF VERMONT, RECIEVED MAY 10, 2016, FILED JUNE 6, 2016 (Writ of Prohibition (page 30 AND 43); SEE ALSO EXHIBIT "A". OF COURSE, THESE MATTERS RELATIVE TO GENOCIDE ARE AIDED BY COERCIVE ISSUES SUCH AS "PLANNED PARENT HOOD" (ABORTION IS THE NUMBER ONE CAUSE OF BLACK DEATHS IN AMERICA) AND THE "GET TOUGH ON CRIME" MOVEMENT, TO NAME A FEW.

BY THE FRUIT OF HER OWN MOUTH THERE IS PAROL EVIDENCE THAT PELOSI HAS PLEDGED ALLEGIANCE TO A FOREIGN OR GLOBAL CABAL, AND DUE TO THE POSITION OF SPEAKER OF THE HOUSE, PELOSI IS BOTH LIABLE AND CULPABLE FOR HER INVOLVEMENT IN THE DEREGULATION UNDER THE VRA OMITT[ING] §5 RESPONSES TO THE SUBMISSION OF STATE LAWS UNDER §5 CENSORSHIP, IN THE "WHITE-VOTER STRENGTH OR PLANTATION POWER" SCHEME, ALSO, SINCE CONGRESS IS RESPONSIBLE FOR MONITORING THE ONGOING AFFECT OF ITS POLICIES, PELOSI IS LIABLE (FOR PURPOSES OF INJUNCTIVE AND DECLATORY RELIEF) FOR THE "GOLDEN-HANDCUFFS" OF HER CABAL'S QUID PRO QUO UNDER THE CONGRESSIONAL SHIBBOLETH OF "GET TOUGH ON CRIME". A SHIBBOLETH THAT UNCONSTITUTIONALLY ENCOURAGED STATES TO IMPLIMENT LYNCH LAWS ASIMILATED BY THE VRA, WHICH ENABLED HILL'S [M]ANDATORY 25 YEAR SENTENCE FOR A FIRST-OFFENSE ARMED ROBBERY AND HILL'S OMISSION FROM [E]LIGIBILITY FOR PAROLE AND HILL'S OMISSION FROM OVERCROWDING CREDITS BASED ON THE SAME CONDUCT UNDERLYING HILL'S ARMED ROBBERY CONVICTION, WHICH IS IN ALL RESPECTS — IMPERMISSIBLE TRIPLE-COUNTING — ESPECIALLY EGREGIOUS SINCE THE MORE SEVERE CRIMES OF AGGRAVATED ASSAULT AND MANSLAUGHTER ARE GRANTED OVERCROWDING CREDITS (30 DAYS FOR EVERY 30 DAYS) ...

(Abrahante v. Daniels, 516 F.3d 1108 (11th Cir. 2008); Calhoun v. Thomas, 579 F.3d 976 (7th Cir. 2009); Whittington v. Stevens, 221 Miss. 598 (1954))

CLEARLY, HILL HAS A PERSONAL INTEREST UNDER THE FEDERAL DECLARATORY JUDGMENT ACT IN DETERMINING THE CONDITION OF SERVITUDE BY BLACK VOTERS/TAXPAYERS SUCH AS HILL (DUE TO Federal deregulation UNDER VRA and the Compact Clause) THAT HAVE OR WILL SUFFER THE PENALTIES OF AN UNSANCTIONED AND REBEL STATE GOVERNMENT [C]ONTROLLED BY GREY-EMMINENCE OR A CABAL, IN A CONFEDERACY WORST THAN THAT OF THE

CIVIL WAR ERA, BECAUSE OF EMBRACERY, THE CONFEDERACY'S [S]INCE ESTABLISH[ED] AUTHORITY IS A [F]OREIGN POWER.

PRIMA FACIE, DUE TO THE FACT THAT PELOSI'S CABAL HAS DIRECTED ITS VRA DEREGULATIONS AGAINST THE BLACK POPULATION FOR, OR TO THE END OF FINANCIAL GAINS IN A GLOBAL MARKET, THE RARA AVIS OF DISCOVERY PROCEEDINGS MAY BE WARRANTED HEREIN, ESPECIALLY SINCE, THE CABAL ALSO ALIGNED DOMESTIC FINANCIAL INTEREST WITH FOREIGN OR INTERNATIONAL FINANCIAL INTEREST BY CHANGING THE U.S. TAX SCHEME FROM THE GROSS NATIONAL PRODUCT (GNP) TO THE COLLIGATIVE GROSS DOMESTIC PRODUCT (GDP) AND USED AMERICAN HOUSEHOLD DEBT AS A "GAPFILLER" IN THE CABAL'S FUNDING OF FOREIGN NATIONS, AND ITS REGULATION OF GREEN-BACKS OR THE U.S. DOLLAR FOR REASONS OF GLOBAL [C]OMPETITION. IN SHORT, PELOSI'S CABAL SOLD FOREIGN DEBT TO U.S. TAXPAYERS SO THAT INSOLVENT COUNTRIES MAY APPEAR SOLVENT FOR PURPOSES OF COMPETATIVENESS.

FERRAGINQUISITION OR A [D]EEP PROBE INTO THE PELOSI FAMILY'S FINANCIAL PORTFOLIO BY THE FINANCIAL CRIMES ENFORCEMENT NETWORK (FCEN), MOST LIKELY WILL REVEAL A DOSSIER THAT REFLECTS INVESTMENTS BY PELOSI'S HUSBAND AND FAMILY MEMBERS THAT NOT ONLY CORRELATE WITH THE ADVANCEMENT OF THE STATE OF NORTH AMERICA, GLOBAL MARKETS, THE GAMING INDUSTRY, THE PHARMACEUTICAL MARIJUANA INDUSTRY, AND OTHER INDUSTRIES NOT SUBJECT TO FEDERAL LAW OR RESTRICTIONS DUE TO THE REPEAL OF STATE BOUNDARIES IN ALLEGANCE TO THE FOREIGN STATE OF THE STATE OF NORTH AMERICA "BLOOD MONEY" DERIVED FROM MATTERS RELATIVE TO GENOCIDE OF BLACK AMERICANS BY REBEL GOVERNMENT CONTRARY TO, AND IN CONFLICT WITH THE VRA, CIVIL RIGHTS ACT OF 1965, THE HUMAN RIGHTS ACT OF 2009, THE RACKETEERING AND INFLUENC ACT, THE COMPACT CLAUSE AND § 4 OF THE 14TH AMENDMENT, AND MOST IMPORTANTLY VIOLATIVE OF THE 13TH AND 15TH AMENDMENT OF THE U.S. CONSTITUTION. AFTER ALL, PELOSI'S HUSBAND AND THE U.S. CONGRESS HAVE NOT MADE AN EFFORT TO RESTRAIN PELOSI'S CABAL, THUS, THEY ARE ALSO LIABLE UNDER THE "COLLECTIVE KNOWLEDGE" DOCTRINE OF PROVIDENCE:

EVERY VOW AND EVERY BINDING OATH TO AFFLICT THE SOUL, HER HUSBAND MAY ESTABLISH IT OR HER HUSBAND MAY MAKE IT VOID.

BUT IF HER HUSBAND ALTOGETHER HOLD HIS PEACE AT HER FROM DAY TO DAY; THEN HE ESTABLISHETH [ALL] HER VOWS OR ALL HER BONDS, WHICH ARE UPON HER;

31-16

HE CONFIRMETH THEM, BECAUSE HE HELD HIS PEACE AT HER IN THE DAY THAT HE HEARD THEM.

ref. HOLY BIBLE (KJV) NUMBERS, ch. 30, VERSES 13 AND 14

THE OMISSIONS OR DEREGULATIONS UNDER THE VRA AND CIVIL RIGHTS ACT OF 1965 CONSTITUTE IMPERMISSIBLE VIEWPOINT DISCRIMINATION FAVORING AN "HANDS-OFF" OR "PLANTATION POWER" POSITION OVER THE "HANDS-ON" POSITION ORDAINED IN THE CIVIL RIGHTS ACT OF 1965, AND OVER THE "ONE MAN, ONE VOTE" APPROACH IN THE SPHERE OF FIFTEENTH AMENDMENT VOTING RIGHTS. THUS, VIA ITS "POLITICAL JUDGMENT" AND "ASSIMILATION" UNDER VRA OF MISSISSIPPI STATE LAWS SUBMITTED FOR CENSORSHIP, CONGRESS HAS IMPOSED UNCONSTITUTIONAL CONDITIONS UPON HILL AND ALL BLACK VOTERS IN THE CONFEDERATE STATE OF MISSISSIPPI OR RECIPIENTS OF FEDERAL FUNDS BY REQUIRING THEM TO RELINQUISH THE RIGHT TO PROCREATE OR POPULATE AND THE RIGHT TO SUFFRAGE IN EXCHANGE FOR THE SUBSIDY OF CITIZENRY. SEE CLINTON, SUPRA, (WRIT OF PROHIBITION)

OF COURSE, "VIEWPOINT-BASED FUNDING DECISIONS CAN BE SUSTAINED IN INSTANCES IN WHICH THE GOVERNMENT IS ITSELF THE SPEAKER." Bd. of Regents of Univ. of Wis. System. v. Southworth, 529 U.S. 217, 229, 535 (2000) HOWEVER, HERE BY DEREGULATION UNDER VRA AND THE CIVIL RIGHTS ACT, CONGRESS ALSO HAS CHOSEN TO FUND THE ACTIVITY OF A COFEDERACY OF REBEL STATES WITHOUT JURISDITIONA[L] BOUNDARIES NOR STATE BOUNDARIES, TO THE EXCLUSION OF THE LEGITIMATE STATE OF MISSISSIPPI.

IN COMBINATION WITH THE CONGRESSIONAL SHIBBOLETH AND SLOGANS OF "GET TOUGH ON CRIME" AND "THE WAR ON CRIME", THE OMISSIONS AND DEREGULATIONS UNDER THE VRA AND THE CIVIL RIGHTS ACT, IN EFFECT AMENDED BOTH ACTS TO THE DETRIMENT OF EMANCIPATED BLACKS DEPRIVING THEM OF EQUAL PROTECTION AND OF LIBERTY AND PROPERTY WITHOUT DUE PROCESS OF LAW, IN PART, BY LESSENING THE BURDEN OF CONTRACT OR CONFEDERATE STATES TO PROVE CRIMES BEYOND A REASONABLE DOUBT AND ENCOURAGING/ENABLING A SITUATION UNDER REBEL GOVERNMENTS FRAUGHT WITH OPPORTUNITIES FOR CONSPIRACIES AND INJUSTICES TO OCCUR.

FN-6

Yu Cong Eng. v. Trinidad 271 U.S. 500, n. 1+n.2, 46 S.Ct. 619, 70 L.Ed. 1059 (1926) (Court considering validity of act it bound to give it such reasonable construction as can be reached, but [MAY NOT] by construction effect an [A]mendment. A strained construction, not warranted by language of statute, [CANNOT] be sustained in order to make law conform to a constitutional limitation.)

Equity / [illegible]

CONGRESS ITSELF HAS CONVEYED THE GOVERNMENTAL MESSAGES OF THE "WAR ON CRIME" AND TO THE STATES "GET TOUGH ON CRIME" AND THE GOVERNMENT DISBURSES [PUBLIC FUNDS] TO THE REBEL GOVERNMENT OF MISSISSIPPI TO CONVEY AND ENFORCE THOSE GOVERNMENTAL MESSAGES, AND AIDED THE ENFORCEMENT OF THOSE QUID PRO QUO MESSAGES WITH WILLFUL BLINDNESS AND RECIPROCAL LEGISLATION (PLRA / AEDPA) AND THE GIFT OF GDP AND NAFTA TO AID OR ADVANCE GLOBAL MARKETS TO THE DETRIMENT OF THE U.S. Dollar AND AN ADVERSE IMPACT ON BLACK VOTER STRENGTH IN MATTERS RELATIVE TO GENOCIDE, AND CONGRESS OR RATHER THOSE THAT ARE NOT MEMBERSHIP INNOCENT IN PELOSI'S CABAL ARE ACCOUNTABLE TO HOI POLLOI OR THE AMERICAN People FOR THE AFFECT OR RESULT OF THEIR POLITICAL POLICIES OR DERANGE[D] LOYALTY OATHS. see Bd. of Regents, supra, at 235 ([W]hen the government [s]peaks, for instance to promote its own policies or [to advance a particular idea], it is, [in the end], accountable to the electorate and the political process for its [advocacy]. If the [c]itizenry objects, newly elected officials later [c]ould espouse some different or contrary position.)

THE EXIGENT NATURE OF THE DISCRIMINATION ALLEGED REACHES INHERENT PERFECTION OF THE RATIFIED DECLARATION OF INDEPENDENCE WHICH TRANSCENDS [ALL] ESTOPPEL DOCTRINES INTO THE AMENESS OF EQUITY AT WHATEVER COST. SEE Diamond Scientific Co. v. Ambico, Inc. 848 F.2d 1220 (Fed. Cir. 1988) (In some circumstances [equity] may outweigh the public-policy reasons behind the estoppel doctrine.)

UNDER DURESS HILL IS [VOUCHING-IN] ITS [ALL] BRANCHES AND DEPARTMENTS OF THE INTERGRATED NATION OF THE UNITED STATES, PURSUANT TO F.R.Civ.P., RULES 9 AND 17. SEE Humble Oil + Ref. Co. v. Philadelphia Ship Maint. Co., 444 F.2d 727, 735 (3d Cir. 1971) (Vouching in... the invitation of a person who is liable to a defendant in a lawsuit to intervene and defend...) THAT FOR PURPOSES HEREIN, BY ASSIMILATION Under THE VRA, HILL IS IN-FACT A FEDERAL PRISONER WHO IS; 1) Aggrieved at the way his mandatory sentence for Armed Roberry is being carried out, only mandatory UNDER §47-7-3(c)(ii) AS ENACTED IN 1995 (Miss. Legislature), a parole eligibility statute AND NOT MANDATORY UNDER the Armed Robbery sentencing statute §97-3-79 (Miss.), especially egregious since Mississippi has never been put to test to set-forth its reasoning for the permanent restriction of [eligibility] for parole for Armed Robbery, a task which the BOP could not achieve. see Arrington v. Daniels 516 F.3d 1106 (9th Cir. 2008), concerning the denial of early release progress for Armed Robbery offenders. Also, Federal censorship under the VRA failed to recognize or discover that the Mississippi legislature may only enact parole laws pertaining to "good" behavior (§225 Miss. Const.), but Hill is denied both parole [eligibility] (§47-7-3(c)(ii), Miss.) and overcrowding credits (§47-5-138.1) for

Armed Robbery (something other than "good" behavior), a Renegade policy long outlawed under Mississippi common law as being violative of the State and Federal separation of powers doctrine. see Whittington v. Stevens, 221 Miss. 598 (Miss. 1954) It is also noteworthy that the sentencing statute §97-3-79 (Armed Robbery) fails to serve any notice whatsoever of the [in]eligibility for parole under §47-7-3 nor of the denial of any overcrowding credits (§47-5-138.1), thus, under the sentencing statute parole [e]ligibility and [e]ligibility for overcrowding credits is not only assumed, but sub-silento implied, especially since the sentencing courts do not give notice of [in]eligibility, nor are the sentencing courts required by [S]tate law to do so, and; (2) Aggrieved that federal deregulation under VRA restrictions have allowed Hill's sentence to be carried out by double-counting and triple-counting under §47-7-3 (Miss. 1995) and §47-5-138.1 (Miss. 2005). In brevity — the Mississippi prosecution scheme for Armed Robbery utilizes the exponent of "use of a deadly weapon" to enhance its criminal statute for Robbery by implimenting a 3yr mandatory minimum and no ceiling in the sentence, and the possibility of a life sentence, only by jury. see Miss. Ann Code §97-3-79 (Robbery using deadly weapon; punishment) Then, for Armed Robbery, the Mississippi Legislature revok[ed] eligibility for parole (§47-7-3) and [e]ligibility for overcrowding credits and early release programs (§47-5-138.1) based on the same deadly weapon and the same conduct that underlie the Armed Robbery conviction. see U.S. v. White, 222 F.3d 363 (7th Cir. 2000) (If a defendant is convicted and sentenced under 18 U.S.C. §924(c) (use of a gun during Robbery), the sentencing judge is prohibit[ed] from enhancing his sentence under the Guidelines for [the same weapon] and [the same conduct] that underlie the §924(c) conviction) id at 373, n.22, 24; see also U.S.S.G §2K2.4(a) and 2K2.4 application Note 2; Crickon v. Thomas, 579 F.3d 978 (9th Cir. 2009); Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008), and; (3) Aggrieved that Hill is illegally detained in "State Procedural Custody" under 28 U.S.C.A. §1915(g) and 28 U.S.C.A. §2244(d) due, in part, to the "omission" of the fact that a legislative sanction binding a pro-se prisoner [litigant], if at all, cannot extend beyond that [p]articular session of Congress in which the act consumating a sanction occured, since Congressional contempt power does not extend beyond a particular session, but ends with adjournment of Congress, thus, in matters of Res judicata and equity of estoppel the §1915(g) sanction is Sisyphurian or superflutous, because matters of this kind require a ruling on the merits of the new claim, which the operation §1915(g) and §2244(d) forbids, but allows a dispositive action for failure to prosecute against a pro-se prisoner

without means to pay the filing fee nor the [meaningful] ability to acquire an attorney, due to the financial regulation of Attorney fees implimented by the PLRA, which indeed inteferes with the private right of both the prose prisoner to contract with an attorney and vice-versa, because of the atypical hardship or Legislative fiat erected to practically eliminate financial profitability of an attorney taking-up a pro-se prisoner claim, and since the Legislative fiat under the PLRA [Results] in an adverse impact upon a majority of Blacks in the Mississippi Prison System violates the Thirteenth Amendment. compare 42 U.S.C.A. § 1981. Absent a Ruling on the merits of the new claim the § 1915(g) sanction fails to rise above Congressional Contempt under 28 U.S.C.A. § 1915 for non-malicious or negligent acts, acts that Congress has declared that [cannot] support sanctions against an attorney because those acts are merely negligent. 28 U.S.C.A § 1927. Clearly, Congress has impermissibly held Hill a pro-se prisoner litigant to higher standard than an attorney via procedural bars, in which Hill's litigation Record will verify, has deprived Hill of over fifty (50) cases where the merits were never heard eventhough the claims were against the government, especially egregious because 28 U.S.C.A. § 1915A is not normally enforced or Rather § 1915A is omitt[ed] from the Rule of Law by Article I (Statutory) Courts.

This is "strong medicine", but under the PLRA and AEDPA assimilated as Federal Law of "State Procedural Custody" under VRA restrictions and the Multistate Confederate Agreement under the Compact Clause, Congressional Silence or omission of political judgment effectively bars Federal review of State criminal prosecutions and procedures, thereby, lessening the burden of the State's to prove crimes beyond a reasonable doubt and enabling cryptic State prosecutions, because the enactment of [Reciprocal Legislation] such as the PLRA and AEDPA in aid of the Multistate Compact to repeal their boundaries (Miss Const. Art. 2 § 3), "significantly reduc[ed] incentative to stay within constitutional bounds in the first place." Osborne v. Ohio, 495 U.S. 103, 121 (1990)

Having been vouched, "Special Justification" exist for a paradigm shift or Congressonal change in position, for Congress to take action or do exploits where Congressional Silence (Hands-off), the PLRA and the AEDPA "changes have removed or weakened the conceptual underpinnings from the prior legislation of Hands-On under the VRA and Civil Rights Act of 1965. see Rodriguez de Quijas v. Shearson / Amer Exp. Inc., 490 U.S. 477, 480-81 (1989); Andrews v. Louisville + Nashville R. Co., 406 U.S. 320, 322-23, 92 S.Ct. 1562 (1972). Clearly, the later Congressionally favored Hands-off changes are "irreconcilable with competing legal doctrines or policies." Braden v. 30th Judicial

21-30

Circuit Ct. of Ky., 410 U.S. 484, 497-99, 93 S.Ct 1123 (1973); Constr. Laborers v. Curry 371 U.S. 542, 552, 83 S.Ct. 531 (1963)

ANOTHER TRADITIONAL JUSTIFICATION FOR VOUCHED-IN INTERVENTION IS THAT THE HANDS-OFF POLICY IS A DIRECT OBSTACLE TO THE REALIZATION OF IMPORTANT OBJECTIVES EMBODIED IN THE VRA, THE CIVIL RIGHT ACT, AND OTHER LAWS SUCH AS THE DOUBLE JEOPARDY CLAUSE, THE FALSE CLAIMS ACT, AND THE COMPACT CLAUSE, ALL OF WHICH ARE UNDERMINED BY THE HANDS-OFF POLICY.

In U.S. Steel Corp. v. Multistate Tax Commission, 434 U.S. 452, 486 (1978) THE SUPREME COURT HELD THAT CONGRESS [M]UST POSSES THE CONTINUING POWER TO [R]ECONSIDER TERMS APPROVED IN COMPACTS, LEST "[C]ONGRESS AND TWO STATES ... POSSESS THE POWER TO MODIFY AND ALTER THE [C]ONSTITUTION ITSELF." Pennsylvania v. Wheeling + Belmont Bridge Co., 18 How 421, 433, 15 L.Ed. 435 (1856); State of Rhode Island v. Comm. of Massachusetts, 37 U.S. 657, 730 (1838); U.S. Const. Amend, 14 § 5; U.S. Const. Amend, 15 § 2; see also Sinnot v. Davenport, 63 U.S. 227, 231 (1859) (Congressional silence as to what it does not do is as expressive of what its intention is, as the direct provisions made by it.)

PREMISES CONSIDERED, THE RULE THAT CONGRESSIONAL CONSENT [T]RANSFORMS AN INTERSTATE COMPACT WITHIN THE COMPACT CLAUSE INTO A LAW OF THE UNITED STATES WAS WELL-ESTABLISHED AT THE TIME OF Cuyler v. Adams, 449 U.S. 433, 439 n.7, 101 S.Ct 703 (1981). In 1940 the SUPREME COURT IN Delaware River Joint Toll Bridge Comm'n v. Colburn, 310 U.S. 419, 60 S.Ct. 1039, 84 L.Ed 1287 (1940), CONCLUDED THAT THE CONSTRUCTION OF SUCH A COMPACT SANCTION[ED] BY CONGRESS BY VIRTUE OF ARTICLE 1 § 10, cl. 3 OF THE CONSTITUTION, INVOLVES A [FEDERAL] "TITLE, RIGHT, PRIVILEGE OR IMMUNITY" (Art. 4 § 2), id. at 427 "THIS HOLDING REAFFIRMED THE LAW-OF-THE-UNION DOCTRINE AND THE UNDERLYING PRINCIPLE THAT CONGRESSIONAL CONSENT [CAN] TRANSFORM INTERSTATE COMPACTS INTO FEDERAL LAW." Cuyler v. Adams, 449 U.S. 433, 439 n.7, 101 S.Ct 703 (1981), see Petty v. Tennesse-Missouri Bridge Comm'n, 359 U.S. 275, 278, 79 S.Ct 785, 3 L.Ed. 2d 804 (1959) ("The construction of a compact sanction[ed] by Congress ... presents a [federal question]."); see also Washington Metro. Area Transit Auth. v. One Parcel of Land, 706 F.2d 1312, 1318 (4th Cir.) (Where two-part test of Cuyler is satisfi[ed], interstate compact [becomes] federal law when consented to by Congress), cert. denied, 464 U.S. 893, 104 S.Ct 238, 78 L.Ed. 2d 229 (1983)

CONGRESSIONAL ACQUIESENCE OR CONSENT TO INTERSTATE BOUNDARIES, INTERSTATEE COMMERECE, FOREIGN COMMERCE, AND VRA RESTRICTIONS ARE APPRORIATE SUBJECTS FOR CONGRESSIONAL LEGISLATION

(WHETHER THE RESULTANT LEGISLATION IS CONSENSUAL OR PROHIBITIVE) FOR THE MULTISTATE COMPACT OF THE NEW STATE OF NORTH AMERICA, WHICH HAS ESTABLISHED THE CHALLENGED STATE OF NEW MISSISSIPPI HEREIN, AND FOR THE COOPERATIVE AGREEMENT OR QUID PRO QUO OR GOLDEN HANDCUFFS OF "GET TOUGH ON CRIME"[7] AND ITS PREDECESSOR OF "THE WAR ON CRIME"[8] -- UNDER THE SUFFRAGE CLAUSE, THE COMMERCE CLAUSE, THE COMPACT CLAUSE, THE EXTRADITION CLAUSE, THE PRIVILEGE AND IMMUNITIES CLAUSE, THE REPUBLICAN GOVERNMENT CLAUSE, THE EMANCIPATION CLAUSE (INVOLUNTARY SERVITUDE)[9], THE TAXATION CLAUSE, THE DUE PROCESS CLAUSE, THE EQUAL PROTECTION CLAUSE, etc. etc., "NO ESTOPPEL DOCTRINE WITHSTANDING." Art 4 § 3, cl. 2, U.S. Const. (AS MODIFIED BY 10th Amend "OR TO THE PEOPLE"); 9th Amend, U.S. Const; DECLARATION OF INDEPENDENCE (AS RATIFIED)); NYSA-ILA Vacation and Holiday Fund v. Waterfront Com'n of..., 732 F.2d 292, 297 (3d Cir. 1984) (Federal Courts are [not bound] by the state court's interpretation because the cooperative agreement was an interstate compact approved by Congress and thus was a [federal law], subject to federal rather than state construction.)

FN-7

It Is Not Whether You Win or Lose, It's How... 38 Cal. W. L. Rev. 283 (2001) (Former Pennsylvania State Attorney General Ernie Preate told lawmakers that the get tough-on-crime mentality along with motivations of "revenge had weakened constitutional safeguards..." Patricia Manson, For Defense, Reform Tide is a Buoyant Force, Chi. Daily, Apr. 22, 2000, at 1. "Politicians of all stripes bow before the altar of 'tough-on-crime' rhetoric as a sure-fire means to boost their electability." 1996 WL 13108692

FN-8

"Pinkerton Charge" Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180 (1946) and "Continuing Violation" Doctrine, 13 Fed. R. Evid. Serv. 396; U.S. v. Mills, 704 F.2d 1553, 1566 (1983) (...must offer some evidence showing that the coconspirator knowingly join[ed] with others to accomplish an [i]llegal purpose. U.S. v. Ballard, 663 F.2d 534, 542-43 (5th Cir. 1981): U.S. v. Middlebrooks, 618 F.2d 273, 278 (5th Cir.), cert. denied, 449 U.S. 984, 101 S.Ct. 401, 66 L. Ed. 2d 247 (1980), and the conspirator knew the [e]ssentials of conspiracy, Ballard, supra, at 543; U.S. v. Alvarez, 625 F.2d 1196, 1198 (5th Cir.

21-23

1981), cert. denied, 451 U.S. 938, 101 S.Ct 2017 (1981) Ample evidence... to show the existence of them conspiracy against... as an aspect of the broader Aryan Brotherhood conspiracy to control... Within this context, the circumstantial evidence of... behavior is [s]ufficient to show his agreement and participation. "A person's acts [can] create an inference concerning what he has agreed to do and, therefore, an agreement to join a [c]riminal conspiracy may be inferr[ed] from the performance of acts that further its purpose." U.S. v. Welch, 656 F.2d 1039, 1056 (5th Cir. 1981), cert denied, 456 U.S. 915, 102 S.Ct. 1767 (1982); U.S. v. Smith, 700 F.2d 627, 632 (11th Cir. 1983) ("The existence of an agreement and the cooperation of the defendant may be proved by circumstantial evidence.); U.S. v. Lee, 694 F.2d 649, 655 (11th Cir 1983) (same)

FN-9

Stevens, supra, at 536 (The dependence of administrative agencies on members of Congress for funding and the approval of proposed legislation operates to the State's advantage and gives the Congresspersons great leverage. see Larry Kramer, Understanding Federalism, 47 Vand. L. Rev. 1485, 1546 (1994) ("[F]ederal bureaucrats recognize the need to avoid alienating members of Congress, whose support they may need in the future and this provides a significant degree of practical control.") Federal administrators, aware that future Congressional support may hinge more on their ability to serve the interest of Congresspersons and their constituents than on the details of a given program, can be very responsive to Congressperson's request for intervention. see Daniel J. Elazar, American Federalism; A View from the States, 179 (3d. ed. 1984)

HILL, FIRMLY ASSERTS THAT THE TOTALITARIAN POLICIES IMPLIMENTED BY PELOSI'S CABAL, SUCH AS OPEN BORDERS, GET TOUGH ON CRIME, HANDS-OFF, PLRA, AEDPA, THE 1995 CRIME BILL, 100 to 1

Apologetics / Mother of Mandamus

COCAINE SENTENCING LAWS; UNCONSTITUTIONALLY ENCOURAGED STATES TO IMPLIMENT "LYNCH LAWS" SUCH AS THE MISSISSIPPI LAWS OF [TRUTH IN SENTENCING] (MANDATORY 85% FOR 1st time violent offenders), INELIGIBILITY FOR PAROLE BY STATUTE FOR ARMED ROBBERY CONTRARY TO AND IN CONFLICT WITH § 225 of the Mississippi Constitution. see WHITTINGTON v. STEVENS, 221 Miss. 598 (1954), SO LIKEWISE FOR BURGLARY OF AN OCCUPIED DWELLING. ALL OF WHICH HILL HAS A "PERSONAL STAKE" UNDER ARTICLE III's CASE OR CONTROVERSY REQUIREMENT, SEE EXHIBIT "B", ESPECIALLY EGREGIOUS BECAUSE HILL IS ALSO DENIED OVERCROWDING CREDITS BASED ON THE SAME REASONING — REASONING THAT WAS NOT PUT TO THE TEST UNDER § 5 OF THE VRA AND DECLINED TO BE HEARD BY ALL ARTICLE III DISTRICT AND APPELLATE JUDGES BASED ON A ARTICLE I REGULATION UNDER 28 U.S.C.A § 1915(g), DESPITE THE PROVISIONS OF 28 U.S.C.A § 1651.

HILL ASSERTS THAT BOTH THE DEREGULATION OR OMISSIONS UNDER THE VRA, THE RECIPRICAL LEGISLATION, AND [MANY] MISCHEVEOUS PRECEDENTS ARE A FORM OF APOLOGETICS TO A HIGHER INTERNATIONAL POWER CONTRARY TO AND IN DIRECT CONFLICT WITH THE ESTABLISHMENT CLAUSE, NOT ONLY A PROPER SUBJECT FOR CONGRESSIONAL LEGISLATION, BUT ALSO ONE OF FEDERAL QUESTION OR ORIGINAL JURISDICTION FOR JUDICIAL MALLEATION UNDER ARTICLE III: U.S. CONST., 1st AMEND.; 18 U.S.C. § 2384; 18 U.S.C. § 2385; 18 U.S.C.A. § 1961 et. seq.; In re African-American Slaves Descendants Litigation, 231 F. Supp. 2d 1357 (2002) (Actions seeking reparations on behalf of descendants of African-American slaves [involved common questions of fact].) So because A COMMON QUESTION OF FACT EXIST HERE, AS TO HOW MANY AFRICAN-AMERICAN HOUSEHOLD'S HAVE BEEN DEPRIVED OF FATHERS DUE TO THESE APOLOGETICS? AND HAVE THESE NEOAPOLOGETICS STAGNATED THE BLACK POPULATION IN BOTH, MISSISSIPPI AND THE UNITED STATES IN MATTERS RELATED TO GENOCIDE, TO WHICH PELOSI IS CULPABLE?

# I. VENUE FACTS

IN THIS INSTANCE, DUE TO [ATYPICAL HARDSHIPS], HILL IS A WAYFARER AT THE WAYSIDE, SEEKING RIGHT-OF-PASSAGE OR WAY-LEAVE, BY WHATEVER SHIBBOLETH NECESSARY TO TRAVEL FROM STATE CUSTODY TO FEDERAL CUSTODY, BY RIGHTEOUS ASSIMILATION ON THE HIGHWAY OF JUSTICE. THEREBY, ENABLING HILL, WHO IS ADRIFT, TO CHART A COURSE IN THE WATERS OF MANDAMUS (extraordinary writ), EMERGING FROM THE BROAD WATERS OF MANDAMUS TO CAREFULLY CHART THE NARROW BUT DEEP AND DEFINITE CHANNEL OF THE WATERS OF THE ORIGINAL "MOTHER OF MANDAMUS" JURISDICTION BELONGING TO THE ARTICLE I COURTS IN THE DISTRICT OF COLUMBIA OR COLONIAL POWER", ESPECIALLY, SINCE A HAUGHTY SPIRIT GOES BEFORE A

FALL AND THE SELF-PROCLAIMED DEMIGOD PELOSI SPOKE HER OWN JUDGMENT OF IMPEACHMENT AS SHE STOOD ATOP HER TOWER OF BABEL, THINKING SHE HAD GOTTEN HERSELF A NAME, UTTERING THE "HAUNTING WORDS"[11] OF "NO ONE IS ABOVE THE LAW." PELOSI ROLL[ED] THE STONE BUT COULDN'T GET IT OVER THE HILL AND JUSTICE [IS] TRULY POETIC! Sisyphus (Proverbs 26:27)

FN-10.

COLONIAL LAW (18c) 1. Law governing a colony or colonie[s]. 2) The body of law in force in the 13 [o]riginal U.S. colonies [before] the Declaration of Independence.

FN-11

Sir Humphrey Gilbert, after two false starts, finally set out with a colonial expedition in 1583, he landed in Newfoundland and took possession of the land for Queen Elizabeth by right of [e]ntitlement by or of John Cabot's discovery in 1497, and read his commission to some mystified fishermen on the shore. Having lost his largest vessel, Gilbert sought to return home. In his Swan Song Gilbert was seen with a book in his hand —— probably Sir Thomas More's Utopia, which inspired his last recorded words. From the deck of his vessel the Squirrel, Gilbert shout[ed] across to his other ship the [haunting words]: "We are as near to heaven by sea as by land." That night his ship vanish[ed] and was [n]ever seen again.

SINCE IT IS IMPOSSIBLE TO SUCCEED FROM A PERPETUAL UNION —— THE MULTISTATE COMPACT OF THE NEW STATE OF NORTH AMERICA OR RATHER APOLOGETICS[12] IN THE REPEAL OF THE STATE BOUNDARIES OF MISSISSIPPI, CAUSED THE STATE OF MISSISSIPPI TO 1.) IMPERMISSIBLY ENTER INTO A CONFEDERACY OR TREATY WITH A FOREIGN POWER (Article I §10, U.S. CONST.) AND, (2) ERECTED AN ILLEGITIMATE STATE WITHIN THE JURISDICTION OF THE STATE OF MISSISSIPPI (Article 4 §3, cl.1, U.S. CONST.).

THUS, BY PROXY OF THE PLANTATION POWER VOTERS THAT REPEALED THE BOUNDARIES OF THE STATE OF MISSISSIPPI IN 1990 —— NEW MISSISSIPPI BECAME A NEOAPOLOGETIC INTERNATIONAL COLONY[13] OR A TRUST TERRITORY[14] GIVING OBEISANCE TO A HIGHER INTERNATIONAL POWER, FOREIGN TO THE U.S. CONSTITUTION (Article I §10, cl.3). THEREBY FORMING A TAX PYRAMID SCHEME VIA NEOCOLONIALISM,[15] AND JOINING A "GIFT ENTERPRISE"[16] WHEREBY WEALTH AND POWER IS DISTRIBUTED TO MEMBERS WHO HAVE RENDERED SERVICE SHOWING REVERENCE TO THE HIGHER INTERNATIONAL POWER[17] AND THOSE MEMBERS WHO HAVE PURCHASED SHARES IN

THE SCHEME BY PHILANTHROPY OR BY DONATIONS TO TAX-FREE FOUNDATIONS IN THE CONFEDERACY, INTER...

FN-12
Apologia (18c) 1) A formal justification for or defense of one's conduct or beliefs; esp., a personal history given in defense or justification of one's life. (2) A formal statement in which one defends an idea or organization that one ardently believes in. Block's Law Dictionary, 10th Ed

FN-13
Colony (16c)(International Law) 1. A dependent territorial entity subject to the sovereignty of an independent country, but considered part of that country for purposes of relation with third countries. (2) A group of people who live in a new territory but retain ties with their parent country (3) A territory inhabited by such a group. Blacks Law Dictionary, 10th Ed.

FN-14
Trust Territory (1945)(International Law) 1)... (3) A part of the United States not included within any state but organiz[ed] with a separate legislature... Blacks Law Dictionary, 10th. Ed.

FN-15
Neocolonialism (1961) Modernly, the economic and political policies by which a strong international power [indirectly] maintains or extends its influence or even control over other areas or people. Blacks Law Dictionary, 10th Ed.

FN-16
Gift Enterprise (1858) 1) A scheme for the distribution of items by chance among those who have purchased shares in the scheme... Blacks Law Dictionary. 10th, Ed.

FN-17
pan (in Greek myths) the god of forests, pastures, flocks and shepherds. Pan is described as a man with the legs, horns, and ears of a goat...

Worship - 1. great honor and reverence paid to someone or something regarded as sacred... 2. Religious [c]eremonies or services in which one

21-96

expresses such honor and REVERENCE
Ref. Scotts Advanced Dictionary (— v.i. perform or take part in [any] act, Rite, or service of worship)

WORSHIP (14c) [Any form] of religious devotion, Ritual, or service showing Reverence, esp. for a divine being or supernatural power ....

Public Worship (16c) 1. Worship conducted by a religious [s]ociety according to the [s]ociety's system of ecclesiastical authority, ritual propriety, and rules and regulations. 2. Worship under public Authority .... Blacks LAW Dictionary, 10th Ed.

In short, the mere fact that the asserted Racket, Gerrymandering, Genocide, Seditious Conspiracy, RICO, etc., includes a question concerning State boundaries, should fall under the original jurisdiction of the U.S. Supreme Court, where the Federal Question concerning the permanent bar or rather the [t]ermination of IFP priveleges in meritorious cases would be the first order of business. But the venue of original jurisdiction is only available for the Middle Class and Higher Income citizens, not for Low-Class citizens or pro-se prisoner litigants such as Hill. In the Low Class category the High Court only consider .01% of cases or 1 in 1,000, thereby unconstitutionally encouraging viewpoint discrimination in Article 1 Courts.

The deck is already stacked against Hill, but Hill's quest to invoke original jurisdiction in the Supreme Court is exacerbated by personal prejudice. see Hill v. Higgins, No. 05-2356 (D.D.C. 2005) However, it was a little better in the old days:

Griffin v. United States, 336 U.S. 704 (1949) ... *723 ... In the last ten complete Terms of Court, only 5.1% of all petitions for certiorari in forma pauperis have been granted. And the percentage of petitions for certiorari, other than in forma pauperis granted in the same period has fluctuated between 14.9 and 25.7. (Annual Report of the Director of the Admin. Office of the U.S. Courts 1948, Table A1)

# A. ATYPICAL HARDSHIP (IN OTHER FORUMS)

HILL ASSERTS THAT DISCRIMINATION EVIDENCE EXIST THAT HILL HAS BEEN IMPROVIDENTLY "BLACK-LISTED" FROM FILING IN THE U.S. SUPREME COURT, EVENTHOUGH HILL HAS FULLY ESTABLISHED THAT ORIGINAL JURISDICTION RELATED TO STATE BOUNDARIES; ESTABLISHED HILL'S RIGHT TO HAVE FOUR (4) JURISDICTIONAL STATEMENTS RELATED TO ORIGINAL JURISDICTION FILED OR SUBMITTED TO THE U.S. SUPREME COURT, SEE "ATTACHMENTS 1, 2, 3, AND 4"; Parko v. Rodak, 606 F.2d 168 (7th Cir. 1979)

FM-18 ** *submitted to U.S. Supreme Court***

Hill v. Clinton Foundation, et. al., 5:17-cv-684 (N.D.N.Y. (submitted 11/28/17)

Hill v. Bryant, et. al., 3:17-cv-603, S.D. Miss. (Submitted 12/1/17)

Hill v. Mississippi, 3:17-cv-648-LG-RHW (submitted 12/27/17)

Hill v. Mississippi, 3:17-cv-469-DCB-LRA (submitted 3/15/18

EVENTHOUGH HILL FILED OR SUBMITTED FOUR (4) JURISDICTIONAL STATEMENTS, HILL ONLY RECIEVED ONE (1) RESPONSE. SEE "ATTACHMENT 5" OVER THIRTEEN (13) YEARS LATER THE SAME CLERK / ANALYSIS (CLAYTON R. HIGGINS) obstructed justice by claiming that the Jurisdictional Statement in Hill v. Bryant WAS SUBMITTED AS A WRIT OF CERTIORARI, AND THE IFP MOTION WAS NOT PROPERLY FILED (BUT IT WAS BOTH SUBMITTED AND SIGNED BY HILL), ALSO Higgins claimed THAT THE LOWER COURT OPINION WAS NOT APPENDED (BUT IT WAS). Higgins CONTINUES TO DEPRIVE HILL OF CIVIL RIGHTS WITH IMPUNITY. SEE Higgins, supra (Hill v. Higgins (2005))

HILL RESPONDED, UNDER DURESS, BY RESUBMITTING THE ALLEGED DEFICIENT JURISDICTIONAL STATEMENT ON 10/11/18. SEE "ATTACHMENT 6" HOWEVER, IT SEEMS THAT THIS PETITION AND ALL OTHER JURISDICTIONAL STATEMENTS, INCLUDING A HABEAS CORPUS, HAVE BEEN IMPROVIDENTLY DISMISSED. "SUB-SILENTO", BY Higgins. HILL ALSO ASK THIS COURT TO TAKE JUDICIAL NOTICE THAT IT IS ALSO DISCRIMINATION EVIDENCE THAT HIGGINS LETTER DATED 8/16/18 CONCEDES THAT THE U.S. SUPREME COURT RECIEVED THE JURISDICTIONAL STATEMENT FIVE (5) MONTHS EARLIER ON 3/27/18; BUT HAS YET TO BE PUT TO THE TEST OF PROVIDING A RARA AVIS TO SUPPORT A FIVE (5) MONTH DELAY IN PERFORMING THE SIMPLE [M]INISTERIAL FUNCTION THAT BROUGHT ABOUT THE RESULT ACCOMPLISHED. FURTHER, IT CANNOT BE SAID THAT SUB-SILENTO CONDUCT BY U.S. SUPREME Court Clerks

IS CARRYING OUT JUDICIAL OR QUASI-JUDICIAL FUNCTIONS WITHIN THEIR AUTHORITY. THEREFORE, THE CLERKS "ARE NOT ENTITLED TO THE CLOAK OF JUDICIAL IMMUNITY FOR THEIR ACTIONS," Brown v. Dunne, 409 F.2d 341, 343 (7th Cir. 1969), AND "THUS, IT IS A TRUISM THAT SOME FORM OF HEARING [IS] REQUIRED". Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982) CLEARLY, THE ATYPICAL HARDSHIP OF BEING IMPROVIDENTLY BLACK-LISTED FROM FILING IN THE U.S. SUPREME COURT WARRANTS THE "MOTHER OF MANDAMUS" JURISDICTION SOUGHT HEREIN, BECAUSE BY OPERATION OF LAW THIS THE "COURT OF FINAL APPEAL" OR RATHER "THE SURROGATE COURT OF LAST RESORT, AUTHORIZED BY MOTHER OF MANDAMUS JURISDICTION TO ISSUE ALTERNATIVE MANDAMUS BY INITIATING A SHOW CAUSE PROCEDURE BASED ON THE NON CONCLUSIVE DISCRIMINATION EVIDENCE AND HILL'S STANDING UNDER CASE OR CONTROVERSY (ART. III) OF ORIGINAL JURISDICTION IN RECORD. see Logan, id at 442 (... giving preference to a discrete class "merely to accomplish the elimination of hearings on the merits, is to make the very kind or arbitrary ... choice forbidden by the Equal Protection Clause..." Reed v. Reed, 404 U.S. 71, 76, 92 S. Ct. 251 (1971) ; Reed v. Allen, ___ U.S. 191, 209 (1932) (A system of procedure is pervert[ed] from its proper function when it multiplies impediments to justice without warrant of clear necessity.)

THE DISCRIMINATION EVIDENCE PRESENTED HERE IS AKIN TO THE HABEAS CORPUS RACKET EXPOSED IN THE TWO (2) SUICIDE NOTES OF FIFTH CIRCUIT COURT, CLERK JERROLD PETERSON. THE 2009 SUICIDE OF PETERSON EXPOSED A HABEAS CORPUS RACKET OR PRACTICE IN WHICH PETERSON WAS INVOLVED IN THE DENIAL OF MORE THAN 2,500 APPEALS WHICH (LIKE HILL'S JURISDICTIONAL STATEMENTS) WERE NOT GIVEN ANY JUDICIAL CONSIDERATION WHATSOEVER. ACCORDING TO MR. PETERSON'S SUICIDE NOTE[S], HE WAS "INSTRUCTED BY THE COURT OR THE CHIEF JUDGE OF THE FIFTH CIRCUIT COURT OF APPEALS IN GRETNA, LOUISIANA IN 1999 TO ROUTINELY PREPARE ORDERS DENYING APPEALS AND HAVE THOSE ORDERS ISSUED WITHOUT THE COURT EVEN TAKING A LOOK AT THE APPEAL." PETERSON WROTE IN A [S]ECOND SUICIDE NOTE TO THE JUDICIARY COMMISSION. PETERSON ALSO NOTED "THE COURT CHARGED LOCAL GOVERNMENT $300 FOR EACH [PRO-SE] APPEAL. WHEN YOU CAN READ NOT A SINGLE WORD AND STILL CHARGE ABOUT $75,000, YOU HAVE A GOOD [RACKET] GOING." SEE ATTACHMENT 7"

THAT WHICH PETERSON EXPOSED, PRIMA FACIE, IS SIMILAR TO THE RECENT "KIDS FOR CASH" RACKET EXPOSED IN PENNSYLVANIA, WHICH IS ALSO DISCRIMINATION EVIDENCE. HOW BE IT, ALL IS BUT A PART OF THE WHOLE SEDITIOUS CONSPIRACY AND RACKET OF APOLOGETICS BY PELOSI AND HER CABAL TO DISENFRANCHISE BLACK VOTERS WITH THE THING OF VALUE BEING WHITE VOTER STRENGTH OR WHITE SUPREMACY IN THE

FURTHERANCE OF WORLD COMMUNISM (AS feared by the Congr. Reece Committee in 1950's). THAT WORLD COMMUNIST SCHEME INCLUDES THE ADVANCEMENT OF COMMUNIST CHINA IN THE GLOBAL OR WORLD MARKET, WHICH IS ALSO THE PRIMARY REASON THE CLINTON ADMINISTRATION ABOLISHED THE GROSS NATIONAL PRODUCT (GNP) AND IMPLIMENTED THE GROSS DOMESTIC PRODUCT (GDP) STANDARD, THEREBY WEAKANING THE U.S. DOLLAR TO INCREASE THE COMPETATIVENESS OF COMMUNIST NATIONS SUCH AS CHINA IN THE WORLD MARKET. ALSO, THE CLINTON ADMINISTRATION ABOLISHED TARRIFFS AND REPEALED THE BOUNDARIES OF THE UNITED STATES (NAFTA), AS WELL AS, DEREGULATED THE BANKING INDUSTRY TO ADVANCE THE GLOBAL ECONOMIC INTEREST OF WORLD COMMUNISM, RESULTING IN CHINA BECOMING THE SECOND LARGEST ECONOMY IN THE WORLD AND THE TIP OF THE SPEAR FOR THE GLOBAL OR WORLD COMMUNIST MOVEMENT. IT IS ALSO NOTEWORTHY THAT THEN SECRETARY OF STATE HILLARY CLINTON BROKERED THE UR-1 DEAL TO SELL A THIRD OF THE U.S.'S WEAPON GRADE PLATONIUM TO COMMUNIST RUSSIA, THEREBY INCREASING RUSSIA'S PRESTIGE IN THE WORLD MARKET. IT IS ALSO A WELL KNOWN FACT THAT PRES. CLINTON RECIEVED EXTRAVAGENT AMOUNTS OF CASH FOR A RUSSIAN SPEACH, AND THE CLINTON FOUNDATION RECIVED PING-PONG FUNDS IN THE MILLIONS FROM RUSSIAN BANKS. GOD ONLY KNOWS HOW MANY RUSSIAN E-MAILS WERE DELETED OR HOW MANY STATE SECRETS RUSSIA DOWNLOADED FROM THE DELIBERATE COMPROMISE OF A HOME SERVER THAT THE CLINTON'S AND ANY OTHER VISITOR TO THEIR HOME IN THE GAT[ED] OR MONITER[ED] COMMUNITY IN CHAPPAQUA, N.Y., ALL TO ADVANCE COMMUNIST NATIONS AND THE EUROPEAN UNION (EU) ON THE WORLD MARKET TO FINANCE WORLD COMMUNISM.

CONTROL OF AND DISENFRANCHISEMENT OF BLACK VOTERS IS ESSENTIAL TO THE ADVANCEMENT OF WORLD COMMUNISM, AN IDEAL IN-OPPOSITE OF MOST BLACKS IDEA OF FREEDOM. THUS, HILL ASSERTS THAT FILING SCHEME AND LOCAL RULE SCHEME IN THE U.S. SUPREME COURT THAT ALLOWS A CLERK TO FILE AN OPINION ON BEHALF OF THE SUPREME COURT WITHOUT SIGNATURES OF THE JUSTICES, IS NOT ONLY FRAUGHT WITH OPPORTUNITY WITH CONSPIRACIES AND INJUSTICES TO OCCUR, BUT IS ALSO A PART OF, AND IN AID OF WORLD COMMUNISM, THAT IS, TO CLOSE THE COURT HOUSE TO BLACKS THAT HAVE BEEN WRONGFULLY PROSECUTED AND DEPRIVED OF THEIR CIVIL RIGHTS BY SUBORDINATE COURTS THAT ENFORCE THE PLRA, AEDPA, ETC. ETC. IN THE RACKET OF WORLD COMMUNISM, TO SURE-UP WHITE VOTER STRENGTH OR WHITE SUPREMACY, VIA RECIPRICATION.

SUCH RACIAL GERRYMANDERING OR TROLLEYOLLOGY IN U.S. GOVERNMENT CREATED A "LEVIATHAN" AND THAT MONSTER HAS TURNED ON ITS CREATOR IN THE FORM OF THE CURRENT "SOCIAL UNREST" OR "FEAR FACTOR" THAT HAS SEIZED THE HEARTS AND MINDS OF BOTH Hoi Polloi AND LAW ENFORCEMENT. THE "GESTAPO" LIKE

ACTIVITY BY SELF-PROCLAIMED RAINBOW GIRLS SUCH AS PELOSI, AS CLASSIC "LIL HITLER"[20] BEHAVIOR OR GOVERNMENT MISCONDUCT OF AN "OPPRESSIVE CHARACTER" THAT HAS CAUSED THE DIRECT CONSEQUENCE OF REBELLION BY FATHERLESS BLACKS, WHOSE FATHERS ARE EITHER DEAD OR IN PRISON WITHOUT HOPE OF EVER ACQUIRING RELIEF FROM AN UNCONSTITUTIONALLY ENCOURAGED CRYPTIC PROSECUTION (GET TOUGH ON CRIME MOVEMENT AND RECIPROCAL FEDERAL LEGISLATION). AFTER ALL, AMERICA WAS BUILT ON THE SAME PREMISE. HISTORY IS WITNESS THAT OPPRESSED PEOPLE WILL REBEL UNTIL THE OPPRESSION IS LIFTED. AMERICA HAS BECOME GREAT AGAIN BY LIFTING FINANCIAL OPPRESSION FROM THE CAPITALIST SCHEME, BUT FINANCIAL GREATNESS DOES NOTHING FOR OPPRESSED PRISONERS SEEKING NOTHING SUPERFLUOUS, BUT MERELY FULFILLMENT OF THE CONSTITUTIONAL GUARANTEE OF FAIR PLAY — THAT WHICH U.S. SUPREME COURT CLERK CLAYTON R. HIGGINS, THE PLRA, AEDPA, THE FEDERAL COURTS OF THE FIFTH CIRCUIT, AND D.C. CIRCUIT HAVE BLATANTLY DENIED HILL.

FN-19

... human beings will live in harmony only when the laws of society are enforced by an awesomely powerful government — a "leviathan" or monster, that can inspire [T]error in its citizens. Without such a government, discord is inevitable, society will collapse, and individuals will find themselves back in the lawless "state of nature where life is "solitary, poor, nasty, brutish, and [S]hort" ...

Ref. Thomas Hobbes: Leviathan, Edited by Noel Malcolm, Oxford Univ. Press

FN-20

During the second World War a new term of abuse entered the English language. To call someone a "little Hitler" meant he was a menial functionary who employed what power he had in order to annoy and frustrate others for his own gratification. From nightclub bouncers to the squaddies at Abu Ghraib prison who tormented their prisoners for fun, little Hitlers plague the world.

Ref. Magazine: The Economist, "All Power Tends To Corrupt", p. 87, October 1st, 2011 Issue

FURTHER, HILL IS ENTITLED TO MOTHER OF MANDAMUS JURISDICTION DUE TO ATYPICAL HARDSHIPS UNDER THE PLRA THAT HAVE PREVENTED HILL FROM CHALLENGING THE PLRA AND AEDPA IN THE DISTRICT COURTS OF THE UNITED STATES. IN CASES SUCH AS Zachary Johnson and Russell

Hill, No. 1:20-cv-00982 (UNA), where Johnson and Hill filed the case against the U.S. Attorney General and several Federal Judges alleging they conspired to deprive Johnson and Hill of an underlying case in the D.C. Courts — Hill was denied IFP and dismissed as a plaintiff in both cases, eventhough the AEDPA or Habeas Corpus is an underlying issue, and it is axiomatic that the PLRA is inapplicable in procedures involving Habeas Corpus. Thus, in the enforcement of the PLRA, the D.C. Courts, in effect, suspended Habeas Corpus on behalf of Hill to silence his viewpoint in both cases. After all, Judges are supposed to know the law. "Gestapo" Techniques, 96 Cong. Rec. 14613, 14634-35 (Sept. 8, 1950)

Also, an atypical hardship exist in the Fifth Circuit Jurisdiction, where the U.S. Supreme Court declared in Miller-El v. Cockrell 537 U.S. 322 (2003), that the Fifth Circuit's Certificate of Appealibility (COA) standard was to strict, but failed to apply a corrective measure. Hill is of the belief that the "too strict" COA standard is the functional equivalent of the suspension of Habeas Corpus at the Federal Appellate level, thus, converting the U.S. District Courts in the Fifth Circuits Appellate Jurisdiction into a "surrogate court of last resort or the end of the Road for Federal Habeas Corpus by state prisoners. The operation of the AEDPA's "successive writ bar" in the Fifth Circuit is not a corrective, but Hill's record in the Fifth Circuit reflects a "stone-wall court", no doubt a predicate act in step with the racial gerrymandering of the no boundaries coalition. It is no wonder that the U.S. Attorney General fought Hill tooth and nail to prevent a study of Fifth Circuit Court practices by the Federal Judicial Center (FJC). The FJC ignored Hill's request for a study of Fifth Circuit Court practices. Hill filed a suit, was granted IFP, won two (2) appeals in the case, but the District Court revoked Hill's IFP status under the PLRA and dismissed the case on remand — eventhough the case obviously was meritorious and the PLRA has no retro-active effect.

Further, no corrective exist in the State Court. Hill is incarcerated on two (2) charges (Armed Robbery and Burglary of an Occupied Dwelling) which were consolidated at the appellate level, and then affirmed on certiorari by the Mississippi Supreme Court. After, the Appellate Attorneys (Public Defenders) in both cases (consolidated though separate trials and unrelated crimes) raised claims of insufficient evidence, but failed to cite a [s]ingle authority neither did the briefs set forth facts or evidence from the record to [e]stablish the claims. The State Courts took Judicial Notice of these facts

21
25
J1-39

¶ 26. While Hill's briefs assert this claim neither brief sets forth facts or evidence from the record to establish that the verdicts were against the weight of the evidence. Phillips v. State, 421 So. 2d 476, 478 (Miss 1982) Hill's briefs merely state that "it was error for the circuit court to let the verdict in this case to stand since it must have been based on [b]ias and [p]rejudice and not the evidence adduced in court," without clearly articulating his reasons for this allegation ...

The State Court of Appeals stated several times that "Hill failed to..." , however, it should have stated "Attorneys for Hill failed to...", but that may have led to Hill winning his pending law suits against the City of Purvis, Lamar County, Miss, and the State of Mississippi, for allowing a "pillow-talk" conspiracy by Municipal Court Judge Pete Gamble (who bound Hill over to the Grand Jury) and his [S]pouse District Attorney for Lamar County Kathy Sones who gave no notice that she was, in-fact, Kathy Sones-Gamble. That "pillow-talk" conspiracy led to falsification of both indictments and cryptic prosecutions by Mrs. Gamble full of falsified reports and documents, false identification testimony, and many other evidentiary or material facts changed at each level of prosecution. For instance, at the Motion for New Trial, Hill presented evidence that:

* Officers did not identify Hill on the night of the alleged robbery as the typed incident report stated. (Hill presented the original handwritten report that failed to identify Hill as the perpetrator, also Hill presented Officer Copper's testimony from a "Suppression Hearing" stating that no one made an identification in pursuit nor from the video that night, eventhough the Officers knew Hill personally) This was clear and convincing evidence that D.A. Sones falsified the incident report and convinced the officers to commit perjury at trial. Also, Municipal Court Judge Gamble testified at trial — as co-counsel Hill was able to question Judge Gamble, and Judge Gamble said that he bound Hill over to the Grand Jury based

BUT FAILED TO APPLY THE CORRECTIVE UNDER THE RULE OF LAW FOR "CONSTRUCTIVE DENIAL OF APPELLATE COUNSEL." NONE CAN DENY THIS "STRUCTURAL ERROR" OF INEFFECTIVE ENFORCEMENT OF THE SIXTH AMENDMENT, THAT SHOULD HAVE REQUIRED IMMEDIATE REVERSAL ON STATE CERTIORARI, REGARDLESS OF ITS EFFECT ON THE OUTCOME (WHICH MOST LIKELY WOULD HAVE RESULTED IN HILL WINNING HIS PENDING FEDERAL SUITS)

FN-31

Hill v. State, 912 So. 2d 991 (Miss. COA's 2004)

*992

Morris Sweatt, Columbia, Attorney for appellant in No. 2003-KA-00007-COA

Charles Baron Irvin, Attorney for appellant in No. 2003-KA-00730-COA

Opinion

King, C.J., for the Court (unanimous* decision)

FN-32

¶ 2. Hill has raised identical issues in the appeal of both his convictions....

¶ 17. On the armed Robbery conviction, Hill claims that the trial court erred by denying his motion for a directed verdict. He argues that the state failed to prove its case but does not state with particularity where the State's proof was deficient.

¶ 18. On the burglary conviction, Hill raises the same issue but "again" fails to establish with particularity the alleged deficiency.

¶ 24. Hill has failed to establish facts or present evidence which support his claims....

on identification by the officers, but when Hill asked the judge if the City incident Reports are usually typed or handwritten, the judge answered handwritten. So Hill handed the judge a copy of the handwritten incident Report and asked him if that was it, and he replied, yes. Hill then asked the judge to point out his probable cause in the incident Report, He Read it and when Hill asked Judge Gamble where was the probable cause in the handwritten Report (Signed by Officer Delk), Judge Gamble stated for the Record "There is None" (No probable cause). The D.A. (Judge Gamble's wife) had no idea that two years later Hill still had the original incident Report from his preliminary hearing before her husband. see Attachment 8

IN THE BURGLARY CASE THE INCIDENT REPORT CLAIMED THE ALLEGED ELEVEN YEAR OLD VICTIM OF SEXUAL ASSAULT HAD BEEN LIVING IN HER AUNT'S HOUSE FOR [SIX MONTHS], AND THE ARREST WARRANT FOR HILL'S ARREST WAS BASED ON THAT STATEMENT. AT TRIAL, BOTH THE ALLEGED VICTIM AND HER COUSIN TARKEISHA TESTIFIED THAT THE SO-CALLED VICTIM HAD BEEN LIVING IN THE HOUSE FOR [TWO WEEKS.] BUT AFTER THE STATE RESTED ITS CASE AT THE END OF THE DAY WITHOUT MY ACCUSER TESTIFYING — — I MADE THE MISTAKE OF TELLING MY ATTORNEY C. BARON IRVIN THAT IN THE MORNING I WANTED HIM TO MOVE TO DISMISS FOR FAILURE TO BE CONFRONTED BY MY ACCUSER. NEEDLESS TO SAY THAT BY THE TIME THEY BROUGHT ME INTO THE COURTROOM, THE STATE HAD REOPENED ITS CASE AND MY ACCUSOR (Carolyn Sue Bolar) WAS ALREADY SITTING ON THE WITNESS STAND, ABSENT ANY OBJECTION BY DEFENSE COUNSEL. CAROLYN'S TESTIMONY YIELDED NO FRUIT FOR THE OFFENSE, BUT CAROLYN, THE SO-CALLED VICTIM'S AUNT AND THE HOMEOWNER, TESTIFIED THAT THE ALLEGED VICTIM [DID NOT] LIVE IN THE HOUSE AND HAD BEEN IN THE HOUSE MAYBE A [COUPLE OF HOURS] WHEN THE ALLEGED CRIME OCCURRED AT ABOUT TWO (2) A.M. SHE WAS THERE BECAUSE CAROLYN FORCED THE ELEVEN YEAR OLD TO LEAVE A PARTY DOWN THE STREET ABOUT MIDNIGHT.

IN THE SAME MANNER THE SOLE IDENTIFICATION OF HILL IN THE INCIDENT REPORT WENT FROM A PORCH LIGHT OFF AND TARKESHIA IDENTIFYING HILL RUNNING UNDER A STREET LIGHT A 100 YARDS AWAY, WITHOUT HER GLASSES. HOWEVER, BY THE TIME SHE TESTIFIED AT TRIAL THE LIGHT WAS ON AND HILL TURNED TO LOOK AT HER WHILE HE WAS RUNNING. THE D.A NOR THE STATE WITNESS REVEALED THE FACT THAT CAROLYN CALLED

THE POLICE TWO WEEKS EARLIER AND ACCUSED HILL OF TRYING TO BREAK IN HER HOUSE. HOWEVER, THEIR WAS NO EVIDENCE AND SHE WAS KNOWN TO HAVE A RELATIONSHIP WITH HILL.

FURTHER, IN THE INCIDENT REPORT THEIR WAS NO EVIDENCE OF SEXUAL INTENT (Touching, Spoken, PENETRATION OR WHATSOEVER). AT TRIAL NO SEXUAL EVIDENCE WAS PRESENTED, NO, NOT ANY. THE ONLY TESTIMONY AT TRIAL, AS NOTED IN THE APPEAL: (Hill v. State, 915 So. 2d 991 (Miss 2004))

> Torkeesha testified that she was awakened by sound of her cousin, who had been sleep on the sofa, [screaming] ... Id at No. 3
>
> ¶13. ... Torkesha ..., was awakened by the sound of someone [banging on the wall] in the living Room of [her] Residence. ...
>
> ¶14. ... According to Tina, [someone] placed a sheet in her mouth and held her feet [to prevent her from Kicking and screaming].

THE QUESTION IS HOW DOES THIS TESTIMONY EXCEED SPECULATION OF SEXUAL INTENT INTO THE REALM OF SEXUAL ASSAULT, AND WHAT DISTINGUISHES THIS TESTIMONY FROM INTENT TO KILL, TO KIDNAPP, TO ROBB, etc., etc.. SPECULATION IS AN INCONSISTENT APPROACH THAT PURPORTS AS MORE EVIDENCE OF INNOCENCE AS IT DOES OF GUILT OR RATHER VIRTUAL EQUIPOISE, THE FUNCTIONAL EQUIVALENT OF [REASONABLE DOUBT].

HOWEVER, THE STATE COURT REWIEGHED THE EVIDENCE AND CREDIBILITY OF THE WITNESSES, WHILE PORTRAYING TORKEESHA AS THE RESIDENT OWNER OR ACUSER INSTEAD OF HER MOTHER CAROLYN, see ¶13, WHOM THE COURT NEVER MENTIONED IN THE EX PARTE APPEAL THAT FAILED TO MAKE A SINGLE REFERENCE TO THE STATE'S BRIEF. THEREBY, RELIEVING THE STATE OF ITS BURDEN TO PROVE THE CRIMES [BEYOND A REASONABLE DOUBT] SEE U.S. v. Tarango, 396 F.3d 666, 678 n.b (5th Cir. 2005) (In our capacity as an [a]ppellate court, we must [NOT] Revisit evidence, Reevaluate witness credibility or attempt to reconcile seemingly contradictory evidence.); U.S. v. Dula, 989 F.2d 772, 778-79 (5th Cir. 1993)

HILL DID NOT HAVE SIX SEPARATE TRIALS IN MISSISSIPPI, LIKE FLOWERS, BUT HILL DID FALL PREY TO SYSTEMIC RACISM LIKE FLOWERS OR THE PATTERN OR PRACTICE OF ALL WHITE JURY'S TO TRY A BLACK PERSON. IN THE ARMED ROBBERY TRIAL THE JURY CONSISTED OF 11 Whites and 1 Black, Like Flowers 6th trial. IN THE BURGLARY CHARGE HILL HAD AN [ALL WHITE] JURY CONSISTING OF 11 white WOMEN AND 1 White MAN, IN A CASE WHERE HILL WAS ACUSSED OF INTENT TO SEXUALLY ASSAULT AN ELEVEN YEAR OLD GIRL. "STRUCTURAL ERRORS" SUCH AS THESE SHOULD REQUIRE AUTOMATIC REVERSAL 21-36

, BUT HILL HAS RAN THE GAUNTLET IN THE FIFTH CIRCUIT JURISDICTION FOR 30 YEARS, IN EVERY CONCEIVABLE METHOD, THERE SIMPLY IS NO CORRECTIVE. THE U.S. SUPREME COURT ONLY HEARS THE CLAIMS OF DEATH ROW INMATES LIKE Flowers. THE JUDICIAL SYSTEM HAS FAILED TO ENFORCE THE FOURTEENTH AMENDMENT FOR INMATES OR PRISONERS OF THE SEVERAL STATES WITH LESS THAN A CAPITOL OFFENSE. THE Flowers case IS INDICATIVE OF SYSTEMIC CRYPTIC PROSECUTIONS AND SHOULD HAVE WARRANTED A STUDY OR INVESTIGATION INTO Mississippi Criminal Court Practices, OBVIOUSLY FLOWERS IS NOT AN ISOLATED INCIDENCE, Flowers v. Mississippi, 588 U.S. ___ (2019), ALSO STATE REPRESENTATIVES HAVE DECLARED THAT IN Mississippi "WE DON'T DO THE CONSTITUTION" SEE ATTACHMENT 9" AND THAT "THEY HAVE DEFIED THE CONSTITUTION IN THE PAST" Ibid see U.S. v. Mississippi, 380 U.S. 128, 144 (1965) (UNANIMOUS COURT) held that:

"We have no doubt whatsoever that it was error to dismiss the complaint without a trial. The complaint charged that the State of Mississippi and its officials for the past three quarters of a century have been writing and adopting constitutional provisions, statutes, rules, and regulations and have been engaging in discriminatory practices, all designed to keep the number of white voters at the highest possible figure and the number of colored voters at the lowest. It alleged that the common purpose running through the States legal and administrative history during that time has been to adopt [w]hatever expedient seemed necessary to establish [white political supremacy] in a completely segregated society. This purpose was indeed recognized by the Mississippi Supreme Court in 1896... Ratliff v. Beale, 74 Miss. 247, 266, 20 S.O. 865, 868... The success of the expedients adopted in 1890 (Ms. Constt.) and in later years to accomplish this purpose [appears from statistics] in the complaint.... The allegations of this complaint were too serious, the right to vote in this country is too precious, and the necessity of settling grievences peacefully in the courts is too important for this complaint to have been dismissed... this day decided. The case should have been tried. It should now be tried [without delay]. Id.

HERE, IT CANNOT BE SAID THAT THERE IS ANY OTHER FORUM AVAILABLE TO PETITIONER HILL,

AND HILL HAS SET FORTH ENOUGH DISCRIMINATION EVIDENCE TO SINK A BATTLESHIP. THIS IS NOT JUST A MATTER OF VENUE, THIS IS A MATTER OF AMERICANISM IN A COURT OF LAST RESORT, BY OPERATION OF LAW IN THE ENFORCEMENT OF THE 13th AND 14th AMENDMENTS OF THE U.S. CONSTITUTION, AND THE "RACIAL ENTITLEMENTS" PRACTICED IN THE COURTS OF MISSISSIPPI MUST BE DENOUNCED OR ELSE "EMBRACERY" LOOMS. compare Adarand Constr. Inc. v. Pena, 515 U.S. 200, 239 (1995) (JUSTICE SCALIA, CONCURRING) STATED that:

"Individuals who have been wronged by unlawful Racial discrimination should be made whole; ... To pursue the concept of [Racial entitlement] — even for the most admirable and benign purposes — is to Reinforce and preserve [for future mischief] the way of think[ing] that produced Race slavery, Race privilege, and Race hatred. In the eyes of government, we are just one Race here. It is American.

B. BLACK STAGNATION MODEL (ATYPICAL Hardship)

VIA THE APOLOGETICS OF WORLD COMMUNISM MISSISSIPPI CREATED A BLACK STAGNATION MODEL UNDER THE STAR OF THEIR god ( [symbol], [symbol], [symbol] ) (KJV, Acts 7:43), WHICH HAS SUCCESSFULLY STAGNATED THE BLACK POPULATION IN MISSISSIPPI AT 37% SINCE 1965. see EXHIBIT A THAT BLACK STAGNATION MODEL WAS LATER ADOPTED BY THE CABAL UNDER THE APOLOGETICS OF THE CLINTON ADMINISTRATION, VIA RECIPROCAL LEGISLATION AND COURT OPERATIONS OF THE DISPARATE POLICIES UNDER BILLS SUCH AS THE 1995 Crime Bill (100 to 1 disparity in cocaine sentences), the PLRA AND AEDPA BARRIERS TO REDRESS OF GRIEVENCE OR THE "HANDS-OFF" APPROACH. THE RESCUE OR DIRECT CONSEQUENCE OF THE HANDS-OFF APPROACH IS STAGNATION OF THE BLACK POPULATION IN THE UNITED STATES FOR THE FIRST TIME IN THE NATIONS HISTORY. SEE 2010 CENSUS LIKE MISSISSIPPI OR RATHER IN A COOPERATIVE AGREEMENT WITH REBEL STATES LIKE "NEW MISSISSIPPI" THE FEDERAL BLACK STAGNATION MODEL PENALIZES CRIMES COMMITTED MOSTLY BY BLACKS, HARSHER THAN IT DOES THOSE COMMITTED MOSTLY BY WHITES, AND THEN ERECTS IMPOSSIBLE BARRIERS TO REDRESS IN THE COURTS, THEREBY UPHOLDING CRYPTIC PROSECUTIONS OF BOTH STATE AND FEDERAL PRISONERS AND IMPERMISSIBLY RELIEVING FEDERAL AND STATE PROSECUTORS OF THE BURDEN OF PROVING CRIMES BEYOND A REASONABLE DOUBT. STATISTICS WILL CERTAINLY PROVE THAT THE EXPEDIENTS OF

THESE BLACK STAGNATION MODELS ARE RELATIVE TO GENOCIDE AND INFANTICIDE, ESPECIALLY GOVERNMENT [FUNDING OF] AND [PROMOTION OF] PLANNED PARENTHOOD POLICIES — ESPECIALLY EGREGIOUS SINCE ABORTIONS KILL MORE BLACKS EVERY YEAR THAN ALL OTHER CAUSES COMBINED.

OBVIOUSLY, CRYPTIC PROSECUTIONS ARE BUT A SMALL PART OF THE SOCIAL CONTROCEPTIVE SCHEME RELATIVE TO GENOCIDE. THE EFFORT TO "MAKE AMERICA GREATER" MUST INCLUDE AN EXPERIENCE OF EQUAL OPPORTUNITY, INSTEAD OF A WELFARE CHECK. EQUAL OPPORTUNITY IS PROVEN TO REDUCE CRIME AND IN TIME IT COULD RECONSTRUCT A BLACK POPULUS WHERE BLACK CHILDREN ARE RAISED IN HOUSEHOLDS WITH BOTH A FATHER AND A MOTHER, OR IF NOT IN THE SAME HOUSE, AT LEAST THE BLACK FATHERS MAY STILL BE AVAILABLE OR INFLUENTIAL IN THEIR CHILDREN'S LIVES. BY MAINTAINING THE MENTAL HEALTH OF BLACK CHILDREN, WE CAN BREAK THE CYCLE OF SUBCONSCIOUS PROSOLYTIZATION INTO BLACK STEREO-TYPES AND GENERATE A POSITIVE AND PRODUCTIVE ATTITUDE IN BLACK AMERICANS, BUT ONLY BY A UNIFI[ED] EFFORT TO CREATE AN AMERICAN SOCIETY WHERE [ALL] AMERICANS RISE OR FALL ON THEIR OWN MERITS, NOT BEING JUDGED BY THE COLOR OF THIER SKIN OR THEIR ACCENT, BUT ON THE CONTENT OF THEIR CHARACTER, EVENTHOUGH IT MAY BE A SECOND CHANCE CHARACTER REHABILITATED FROM PAST WRONGS. ONLY THEN CAN WE COMBAT THE SECRET SOCIETIES, SECRET OATHS AND ITS SECRET PROCEEDINGS TO CENSOR THE NEWS, MAKE VOID THE FIRST AMENDMENT AND SUBVERT THE U.S. GOVERNMENT FROM WITHIN, AS PRESIDENT KENNEDY PROPHETICALLY SPOKE IN THE BEGINNING OF HIS SHORT-LIVED PRESIDENCY.[33] HAVING FULL KNOWLEDGE OR DA'AT ((KJV) ISAIAH 53:11,12) OF CONGRESSIONAL COMMITTE REPORTS SINCE THE 1930'S, ESPECIALLY THE RECENT REECE COMMITTEE REPORTS OF THE 1950'S,[34] CHRONICLING THE ACTIVITIES OF WORLD COMMUNISM, NOW TERMED NEW WORLD ORDER (NWO) — PRESIDENT KENNEDY DENOUNCED THE SAME SUBVERSIVE ACTIVITY OF WHICH I NOW SPEAK. THUS, AS A MATTER OF NATIONAL SECURITY THIS COMPLAINT SHOULD, IMMEDIATELY BE ROUTED TO THE APPROPRIATE AGENCIES AND CONGRESSIONAL COMMITTEES.

President John F. Kennedy Speech, April 27, 1961

FN-33

The very word "secrecy" is repugnant in a free and open society; and we are as a people inherently and historically opposed to secret societies, to secret oaths, and its secret proceedings.... For we are opposed around the world by a [m]onolithic (massive) and ruthless conspiracy that relies primarily on covert means for expanding its sphere of influence — ON INFILTRATION instead of invasion, ON SUBVERSION (def. – a systematic attempt to overthrow or undermine a government or political system by persons working secretly from within) instead of elections, ON INTIMIDATION instead

21-39

of free choice, ON GUERRILLAS BY NIGHT instead of armies by day. It is a system which has conscripted VAST human and material resources into the building of a tightly KNIT highly efficient machine that combines military, diplomatic, intelligence, economic, scientific, and political operations. Its preparation are CONCEALED, not published. Its mistakes are BURIED, not headlined. Its dissenters are SILENC[ED], nor praised. No expenditure is questioned, no rumor is printed. NO SECRET IS REVEALED. It conducts the COLD WAR (the contest for power between the communist nations), in short, with war-time discipline no democracy would ever hope or wish to match. Nevertheless, every democracy recognizes the necessary restraints of [National security] — and the question remains whether those restraints need to be more strictly observed if we are to oppose [this kind of attack] as well as an outright invasion...

Ref. John F. Kennedy, April 27, 1961 Speech

FN-34 George Bush, Senior, 9/11/91, Speech

... We have before us the opportunity to forge ourselves and for future generations a NEW WORLD ORDER, a world where the rule of law, not the rule of the jungle governs the conduct of nations. When we are successful, AND WE WILL BE, we have a real chance at this New World Order in which a credible United Nations can use its peace keeping role to fulfill the promise and vision of the U.N's founders....

THE APOLOGETICS OF GEORGE BUSH, SENIOR EXPRESS'S A CLEAR [LOYALTY TO AN OATH] VALUED ABOVE OR CONCIOUSLY ESTEEMED HIGHER THAN THE OATH OF HIS OFFICE AS PRESIDENT OF THE UNITED STATES AT THE TIME OF THIS SPEECH. OBVIOUSLY, THIS SPEECH HAD A DUAL AND CONCURRENT PURPOSE FOR SHAPING FOREIGN POLICY AND IN MATTERS PERTAINING TO NATIONAL SECURITY. THE "US" IN BUSH'S SPEECH COULD EASILY BE CONSTRUED AS THE "N2" (segregation Nation/deep-state/establishment, etc.) AND VIA HINDSIGHT READILY BELIEVED OF THE ESPIONAGE EXPERT OR FORMER DIRECTOR OF THE CIA. 21-40 THE SAME CIA THAT, AS A MATTER OF RECORD, INTRODUCED "CRACK-COCAINE" INTO BLACK COMMUNITIES (100+01)

AND SIPHILLUS INTO PREDOMINATELY BLACK PRISONS

IN CURRENT TIMES PRESIDENT TRUMP HAS A ZEAL TO KEEP VIOLENT OFFENDERS OFF THE STREETS , SUCH IS COMMENDABLE, BUT CAN ALSO ^CAN^ BE EASILY INTERPRETED BY THE BLACK EXPERIENCE TO MEAN, "BY WHATEVER MEANS NECESSARY" AND SINCE MOST VIOLENT CRIMES ARE COMMITTED BY UNDERPRIVILEGED BLACKS — THAT ZEAL COULD ALSO BE MISINTERPRETED BY THE BLACK EXPERIENCE TO MEAN: "LOCK THEM BLACKS UP AND THROW AWAY THE KEY."

THE BLACK EXPERIENCE IN THE AMERICAN CRIMINAL JUSTICE SYSTEM (ACJS) HAS BEEN ONE AS DISPARATE AND BRUTAL AS SLAVERY, BECAUSE STATE AND FEDERAL LAWS (RECIPROCAL LEGISLATION) PERTAINING TO THOSE PRE-DISPOSED TO COMMIT VIOLENT CRIMES, MAKE [V]OID THE ASPECTS OF OF [R]EDRESS OF GRIEVENCE AND OF [R]EHABILITATION, THEREBY, UNCONSTITUTIONALLY ENCOURAGING CRYPTIC PROSECUTIONS AND SUSPENDING HABEAS CORPUS TO ENSURE THE STAGNAT[ING] AFFECT OF NOT HAVING TO PROVE [VIOLENT CRIMES] BEYOND A REASONABLE DOUBT — ALL UNDER THE GUISE OR SHIBBOLETH OF "Get Tough on Crime".

THE PRESIDENT HAS A NOBLE CAUSE BUT HE HAS FAILED TO FREE THE PROCESS OF PROSECUTING VIOLENT CRIMINALS OF RACISM. IT IS CERTAIN THAT PRESIDENT TRUMP ("The DONALD"... IN FULL RESPECT, WITH NO DISRESPECT INTEND) HAS MET HALF THE CRITERIA (KJV, Proverb 3:1-4), AND WITHOUT QUESTION, LIKE SISYPHUS, "THE DONALD" HAS THE STAMINA OR INTESTIONAL FORTITUDE TO CONTINUALLY ROLL THE HEAVY "STONE OF GREATNESS" TO THE TOP OF THE MOUNTAIN (KJV, Exodus 34:2) EVERYTIME. BUT THE QUESTION IS, "WILL "THE DONALD" BREAK THE SISYPHURIAN Cycle OF GREATNESS AND [STAY] ON TOP OF THE MOUNT AMONG THE "LIVING.""

SISYPHUS WAS IN HABEAS OR HELL, SUPPOSEDLY SENTENCED FOR HIS WICKED DEEDS ON EARTH, DESTINED TO FUTILITY. THOUGH NOT SENTENCED FOR ANY CRIMES, LIKE SISYPHUS, "THE DONALD" HAS BEEN SUBJECTED TO "HELL ON EARTH", NOT FOR ANY WICKEDNESS, BUT FOR AMERICA'S SAKE, NOT FUTILITY — CHOSEN BY PROVIDENCE IN THE NAME OF JESUS FOR A HIGHER CAN OR TO FULFILL A TASK -- SO AS THE ENTIRE WORLD CAN SEE, NO WEAPON FORMED AGAINST "THE DONALD" AND [redacted], AT THIS TIME, WILL PROSPER SAITH THE LORD (KJV, ISAIAH 54:17/55:11)

THE ONLY QUESTION THAT REMAINS IS "WHEN "THE DONALD" REACHES THE TOP OF THE MOUNTAIN THIS TIME, IS — WILL "THE DONALD" APPEAR BEFORE PROVIDENCE (Zechariah 3:1) WITH ONLY THE ROCK OF GIBRALTAR IN HAND — HAVING ONLY PARTIALLY FULFILLED THE WILL OF GOD (I Samuel 15:10-34/Numbers 24:7,20), OR WILL "THE DONALD APPEAR BEFORE PROVIDENCE WITH BOTH THE ROCK OF "GIBRALTAR" AND THE ROCK OF "JEBEL MOSA" JOINED AS ONE ROCK IN HIS HAND (Ezekiel 37:15-17/ I Corinthians 10:4),

AS A FAITHFUL MESSENGER JESUS CHRIST AND OF THE TRUE GOD (JOHN 17:3/PS. 25:13)

THE BEAST THAT PROMULGATED THESE ARBITRARY POLICIES IS "EVIDENCE THAT ALL GREAT MEN ARE NOT WISE" (KJV. JOB 32:9). HOWEVER, GOD STILL LOVES ALL HIS PEOPLE [DEUTERONOMY 33:3], WHETHER THEY ARE IN PRISON OR NOT (MATTHEW 25:41-46). AFTER ALL, ONE CANNOT LEGITAMATELY PROFESS TO BE A CHRISTIAN AND A LOVER OF GOD, AND NOT LOVE ALL GOD'S CHILDREN, REGARDLESS OF THEIR COLOR, -- ESPECIALLY THOSE GOD HAS SAVED IN PRISON AND INTENDS THEIR EXODUS.

THUS SAITH THE LORD OF HOST, "THE TIME HAS COME TO END THE BLACK STAGNATION PLAN OF WORLD COMMUNISM, BY FIXING THE BILL OF RIGHTS ENFORCEMENT SYSTEM, NAMELY THE FIRST AMENDMENT RIGHT TO REDRESS OF GRIEVENCE VIA A [C]OMPETENT JUDICIAL PROCESS ABSENT RECIPROCAL FEDERAL LEGISLATION OR KNOWN UNCONSTITUTIONAL BARRIERS SUCH AS THE PLRA AND THE AEDPA." THE TIME HAS COME TO REVISIT THESE MATTERS. HEAR ME. (DEUTERONOMY 18:19) THE PLAGUE HAS ALREADY BEGUN.

## GROUNDS FOR RELIEF

WHETHER THE OMISSION OF POLITICAL JUDGMENT, IN RECORD, BY THE FEDERAL GOVERNMENT UNDER THE VOTING RIGHTS ACT'S § 5 CENSORSHIP OF LAWS IN THE STATE OF MISSISSIPPI HAS RESULTED IN A UNTENABLE CONFEDERACY AND COOPERATIVE AGREEMENTS BY MISSISSIPPI UNDER THE COMPACT CLAUSE OF THE UNITED STATES; ALL BASED ON RACIAL ANIMUS AND APOLOGETIC GERRYMANDERING OR DELIBERATE DESIGN BY THE STATE OF MISSISSIPPI TO CREATE A BLACK STAGNATION MODEL TO CURTAIL THE "FUNDAMENTAL INTEREST" OF THE BLACK FRANCHISE IN MISSISSIPPI AND IN HUMAN REPRODUCTION OF BLACKS IN MISSISSIPPI AND ULTAMATELY IN THE UNION; THAT NOW EXIGENTLY REQUIRES CONGRESS TO PROVIDE "RATIONAL BASIS", IN RECORD, AS TO WHY THE ASSIMILATED STATE LAWS UNDER THE VRA AND DOJ OMISSIONS OR DEREGULATION UNDER THE VRA SHOULD NOT BE SUBJECT[ED] TO "STRICT SCRUTINY" ANALYSIS, IN THE MATTERS OF:

1) THE UNTENABLE REPEAL OF THE MISSISSIPPI STATE BOUNDARIES IN 1990, WITHOUT A CONTINGENCY OR SAVINGS CLAUSE FOR CRIMINAL JURISDICTION TO THE MISSISSIPPI STATE-HOOD ACT AND ALL THE LAWS OF THE UNION; THEREBY, LEAVING IN QUESTION THE VALIDITY OF STATE CRIMINAL INDICTMENTS AND CRIMINAL PROSECUTIONS UNDER § 169 OF THE MISSISSIPPI CONSTITUTION, AS THE TERM STATE OF MISSISSIPPI IS LEGALLY [UN]DEFINED FOR PURPOSES OF PERSONAL JURISDICTION AND OF SUBJECT MATTER JURISDICTION, PERENINALLY. PRIMA FACIE ALL CRIMINALLY COMITTED PRIS-

PRISONERS
ONERS IN THE STATE OF MISSISSIPPI ARE, IN-FACT, "FREE BIRDS." ARTICLE 2 § 3, MISS. CONST.

2) A UNTENABLE [S]TATUTORY MISSISSIPPI APPELLATE COURT ENACTED IN 1995 TO EXERCISE JURISDICTION OVER THE CIRCUIT AND CHANCERY COURTS OF MISSISSIPPI, BOTH OF WHICH ARE "CONSTITUTIONAL COURTS" IN THE SIMILITUDE OF THE ARTICLE III COURT IN THE FEDERAL SCHEME. THUS, SUCH A COURT CAN ONLY BE ESTABLISH[ED] BY THE PEOPLE OF MISSISSIPPI AT THE BALLOT BOX (AMENDING THE STATE CONSTITUTION) — THE LAW DOES NOT VIVIFY AN ADVISORY OPINION BY THE STATUTORY MISSISSIPPI COURT OF APPEALS AND HILLS APPEAL IS VOID AB INITIO

3) UNTENABLE PAROLE LAWS IN THE STATE OF MISSISSIPPI DELIBERATELY FASHIONED BY THE STATE LEGISLATURE TO DENY [E]LIGIBILITY FOR PAROLE IN CRIMES COMMITTED MOSTLY BY BLACKS PRE-DISPOSED TO COMMIT THEM, ALL BASED ON "STATUS" INSTEAD OF GOOD-BEHAVIOR, E-CONTRA TO § 225 OF THE MISSISSIPPI CONSTITUTION. SEE Whittington v. Stevens, 221 Miss. 598 (Miss. 1954) ALL THE [E]LIGIBILITY LAWS IN QUESTION WERE ENACTED WHILE MISSISSIPPI WAS UNDER VRA RESTRICTIONS AND AMOUNT TO QUINTUPLE-COUNTING OF A SINGLE DEADLY WEAPON IN HILLS ARMED ROBBERY PROSECUTION UNDER Miss. Code § 97-3-79. FIRST, APPLYING A THREE (3) YEAR MINIMUM AND A LIFE-SENTENCE BY JURY UNDER THE [S]ENTENCING STATUTE FOR THE SAME WEAPON AND THE SAME CONDUCT IN THE UNDERLYING CONVICTION; SECOND, DENYING HILL [E]LIGIBILITY FOR PAROLE UNDER Miss. Code § 47-7-3 (c)(ii) ABSENT NOTICE, NEITHER IN THE CHARGING DOCUMENTS NOR IN THE SENTENCING STATUTE, BASED ON THE SAME WEAPON AND THE SAME CONDUCT IN THE UNDERLYING CONVICTION; THIRD, DENYING HILL GOOD-TIME CREDITS (OTHERWISE QUALIFIED FOR) BASED ON THE SAME WEAPON AND SAME CONDUCT IN THE UNDERLYING CONVICTION, Miss. Code § 47-5-138; FOURTH, DENYING HILL EARNED TIME CREDITS BASED ON THE SAME WEAPON AND THE SAME CONDUCT IN THE UNDERLYING CONVICTION, Miss. Code § 47-5-139; FIFTH, DENYING HILL OVERCROWDING CREDITS (OTHERWISE QUALIFIED TO RECIEVE) BASED ON THE SAME WEAPON AND SAME CONDUCT IN THE UNDERLYING CONVICTION, Miss Code § 47-5-1[illegible]

THE MISSISSIPPI SUPREME COURT HAS DECLARED THAT THE STATE EARLY RELEASE PROGRAMS AND STATE PAROLE STATUTES "Miss § 47-7-3 APPLIES [ONLY] TO THE INTERNAL OPERATING PROCEDURES OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND THE PRISONS, AND

[DOES NOT] EFFECT A JUDGE'S SENTENCING PREROGATIVE UNDER THE CRIMINAL STATUTES," Parker v. State, 30 So.3d 1222 (Miss. 2010) THUS, AS STRANGE AS IT MAY SEEM, EVENTHOUGH THE PAROLE SYSTEM IS A STATUTORY ONE, IT IS STILL SUBJECT TO THE RESTRICTIONS OF BOTH THE FEDERAL AND STATE ADMINISTRATIVE PROCEDURE ACT (APA) AS AN EXECUTIVE FUNCTION OF THE STATE AGENCY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS (MDOC). HOWEVER, DOJ FAILED TO COMPLY WITH VRA RESTRICTIONS BY SUBJECTING THESE AND OTHER STATE LAWS TO A OBJECTIVE STANDARD OF "RATIONAL BASIS."

AT THIS TIME THE COURT SHOULD TAKE JUDICIAL NOTICE THAT "THE BUREAU OF PRISONS (BOP) WAS PUT TO THE IDENTICAL TASK UNDER "RATIONAL BASIS" ANALYSIS OF THE APA, AND BOP COULD NOT MEET THE CHALLENGE OF PROVIDING A RATIONAL BASIS FOR CATEGORICALLY EXCLUDING FROM EARLY-RELEASE PROGRAMS THOSE FEDERAL PRISONERS CONVICTED OF OFFENSES INVOLVING POSSESSION, CARRYING, OR USE OF FIREARMS, THUS, BOP WAS COURT ORDERED TO EXTEND THE BENEFITS OF THOSE EARLY RELEASE PROGRAMS TO THE PREVIOUSL EXCLUDED CLASS OF CONVICTS WITH FIREARM CHARGES. Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008); Crickon v. Thomas, 579 F.3d 978 (9th Cir. 2009)", THAT, "THERE IS A HIGH LIKELY-HOOD OF SUCCESS, SINCE DOJ COULD NOT CONJURE A RARA AVIS (RARE BIRD) TO VIVIFY THE FEDERAL EXCLUSION." IN SHORT, DOJ SHOULD IMMEDIATELY [C]ONCEDE THAT IT CANNOT JUSTIFY THE COLLECTIVE AGREEMENT OF THE ASSIMILATED STATE EXCLUSION RULE EITHER.

4) UNTENABLE STATE POST-CONVICTION LAWS AND PROCEDURES, WHERE STATUTORY LAWS PRESCRIBE RULES OF PROCEDURE FOR CONSTITUTIONAL CIRCUIT COURTS AND ABOLISHING THE COMMON LAW WRITS OF THOSE CONSTITUTIONAL COURTS. SEE Mississippi Uniform Post-Conviction Collateral Relief Act (UPCCR) § 99-39-3 (The purpose of this article is to revise... this article... [S]upersedes Rule 8.07 of the Mississippi Uniform Criminal Rules of Circuit Court Practice (written by Miss. Supreme Court) and [a]bolishes the common law writs relating to post-conviction collateral relief, including by way of illustration but not limitation, error coram nobis, error coram vobis, and post-conviction habeas corpus, as well as statutory post-conviction habeas corpus....) ONE CANNOT BUT LONG TO HEAR THE "RATIONAL BASIS" THAT LENDS TO THE STATE LEGISLATURE THE GREAT POWER TO REND THE RULE-MAKING AUTHORITY FOR THE

[CONSTITUTIONAL COURTS] OF THE STATE OUT OF THE HANDS OF THE Mississippi Supreme Court. The Mississippi Post Conviction Act was written in Response to the Mississippi Uniform Rules of Circuit Court Practice, which cited Newell v. State, 308 So.2d 71 (Miss. 1975) AS THE DEFINATIVE AUTHORITY FOR WRITING THE RULES BY THE SUPREME COURT WITH NO STATUTORY LAW WITHSTANDING. The Newell Court held [unanimously] that:

... The inherent power of the Mississippi Supreme Court to promulgate procedural Rules emanates from the [f]undamental constitutional concept of the "separation of powers (Art 1 § 2, Miss. Const.) and the vesting of judicial powers in the courts. Matthews v. State, 288 So.2d 714 (Miss. 1974); Gulf Coast Drilling & Exploration Co. v. Permenter, 214 So.2d 601 (Miss. 1968); and Southern Pacific Lumber Co. v. Reynolds, 206 So.2d 334 (Miss 1968), wherein the following was stated:

... The phrase "judicial power" in § 144 of the Mississippi Constitution includes the power to make Rules of practice and procedure, not inconsistant with the Constitution, for the efficient disposition of judicial business. Id. at 335

... This leaves [no room] for a [d]ivision of authority between the judiciary and the legislature as to the power to promulgate Rules necessary to accomplish the judiciary's constitutional purpose.... We believe no citation of authority is needed for the [u]niversally accept[ed] principle that if there be a clash between the edicts of the Mississippi Constitution and the legislative enactment, the latter must yield. Id.

The UPCCR claims that "THE RELIEF FORMERLY ACCORDED BY SUCH WRITS MAY BE OBTAINED BY AN APPROPRIATE MOTION UNDER THIS ARTICLE" § 99-39-3, BUT THIS IS FALSE BECAUSE THE SUCCESSIVE WRIT BAR IMPLIMENTED BY UPCCR IS UTILIZED AS A WEAPON OF OPPRESSION TO PREVENT PRISONERS FROM FILING IN THE CONSTITUTIONAL CIRCUIT COURT. THE STATE LEGISLATURE'S GRANT OF EXCLUSIVE JURISDICTION TO CONSTITUTIONAL CIRCUIT COURTS FALSELY IMPLIES THAT THE LEGISLATURE COULD TAKE THAT CONSTITUTIONAL JURISDICTION AWAY BY IMPLIMENTING A SUCCESSIVE WRIT SCHEME THAT OPERAT-

21-45

OPERATES
-ATES AS A BAR CONTRARY TO THE Mississippi Constitution §11 and §25. THE UPCCR HAS EFFECTIVELY SUSPENDED HABEAS CORPUS IN MISSISSIPPI IN THE AID OF BLACK STAGNATION AS A FORM OF GERRYMANDERING TO MAINTAIN WHITE VOTER STRENGTH, IN PART, BY LEGISLATIVELY SUPERSEDING MISSISSIPPI SUPREME COURT DECISIONS INTERPRETING AND APPLYING BOTH THE FEDERAL AND STATE CONSTITUTIONS. SEE Dickerson v. United States, 530 U.S. 428, 437 (2000) (Congress [MAY NOT] legislatively supersede our decisions interpreting and applying the Constitution); Miss. Const. §11, §13, §24, §25, §56

5) UNTENABLE HABITUAL OFFENDER LAWS UNDER Miss. §99-19-81 AND §99-19-83 OF THE Mississippi Code. —— Hill HAS two (2) violent FELONIES AND THE SWORD OF DAMOCLES IS HANGING OVER HIS HEAD UNDER §83, WHERE DOJ's FAILURE TO PLACE ITS POLITICAL JUDGMENT IN RECORD UNDER VRA RESTRICTIONS IN EITHER STATUTE. THAT OMISSION BY DOJ RESULTED IN A MISNOMER, WHERE BOTH OF THESE STATUTES ARE PERMITTED TO PUNISH A STATUS CRIME OF THIRD-FELONY OFFENDER AS A HABITUAL OFFENSE FOR THE SAME CONDUCT IN THE UNDERLYING THIRD CONVICTION: THE STATE PROCEDURE IMPERMISSIBLY ALLOWS THE THIRD FELONY TO RECIEVE DIFFERENT EVIDENCE FROM THAT OF THE TWO PRIOR FELONIES IN ORDER TO OBTAIN A HABITUAL OFFENDER CONVICTION BASED ON THE SAME CONDUCT IN THE UNDERLYING THIRD CONVICTION, THEREBY, DOUBLE-COUNTING THE CONDUCT IN THE THIRD-FELONY CONVICTION, AND ALLOWING A HABITUAL OFFENDER SENTENCE ENHANCEMENT BASED ON THE SAME CONDUCT IN THE CURRENT THIRD-FELONY CONVICTION, INSTEAD OF [PAST] HABITUAL-OFFENDER CONDUCT. ALL CONTRARY TO THE U.S. CONSTITUTION AND INOPPOSITE THE ANALOGOUS FEDERAL CAREER OFFENDER ACT —— IMPERMISSIBLY PUNISHING HABITUAL CONDUCT AS A POLICY OF 2 OR MORE felonies INSTEAD OF THE REQUIRED 3 OR MORE FELONIES RECIEVING THE SAME EVIDENCE. A SOCIAL-CONTRACEPTIVE IN SERVICE OF THE BLACK STAGNATION MODEL, DUE TO ITS ADVERSE IMPACT ON THE MAJORITY PUNISHED, BLACKS, OF COURSE.

6) UNTENABLE VOTER QUALIFICATION LAWS IN Mississippi (CONSTITUTIONAL AND STATUTORY) THAT TARGET AND TERMINATE VOTING RIGHTS IN CRIMES COMMITTED MOSTLY BY PREDISPOSED AND UNDERPRIVELEGED BLACKS, THEREBY, 1 OUT OF 4 BLACK MEN IN Mississippi ARE DISQUALIFIED TO VOTE IN STATE ELECT-

51-46

Elections
IONS FOR ELECTING STATE REPRESENTATIVES TO THE U.S. CONGRESS, SUCH IS THE FUNCTIONAL EQUIVALENT OF REDUX TO THE 3/5 this Rule under Article 1 § 2, cl. 3 (otherwise modified by 14th Amend.), THEREBY CREATING A POLITICAL POWERLESS BLACK POPULATION IN MISSISSIPPI, THAT IS INCAPABLE OF ELECTING BLACKS TO KEY STATE OFFICES SUCH AS GOVERNOR, LT. GOVERNOR, SECRETARY OF STATE, etc. — ALL IN VIOLATION OF THE 15TH AMENDMENT AND IN THE MAINTENANCE OF WHITE POLITICAL SUPREMACY OR PLANTATION POWER OR APOLOGETICS, ABSENT RATIONAL BASIS. see U.S. v. Mississippi, 380 U.S. 128, 144 (1965) ... To establish white political supremacy... This purpose indeed was recognized by the Mississippi Supreme Court in 1896 when it said, speaking of the convention which adopted the 1890 Constitution, "Within the field of permissible action under the limitations imposed by the federal Constitution, the convention swept the circle of expedients to obstruct the exercise of the franchise by the Negro Race)

7.) PLRA: Hall seeks RELEASE FROM THE PENALTY OF 28 U.S.C. § 1915(g), BECAUSE IT IS UNCONSTITUTIONAL [IN MANY WAYS] AND ACTUALLY AIDS THE FEDERAL AND STATE BLACK STAGNATION BY PERMANETLY [T]ERMINATING IFP BENEFITS TO PRO-SE PAUPER PRISONERS IN SAU SPONTE PROCEEDING UNDER STATUTORY POWERS THAT EXTEND A LEGISLATIVE PRESUMPTION OF GUILT, WHICH IS THE FUNCTIONAL EQUIVALENT OF A MOTION TO DENY IFP, BY THE U.S. AS A PARTY (if the new claim is against the government). THE LEGISLATIVE FIAT OF A SAU SPONTE PROCEEDING UNDER THE PLRA UNCONNECTED [S]EVERAL CONSTITUTIONAL SAFEGUARDS THAT PROMOTE EVENHANDED JUSTICE UNDER THE FIRST AMENDMENT. IN OPERATION, THE PLRA [I]MPERMISSIBLY UNCONNECTED, 1) the "Safe Harbor" Rule, WHICH CONVERTED A SECOND CHANCE RULE INTO ENTRAPMENT FOR WHAT PRISONERS ARE PREDISPOSED TO DO; 2) OMITTED "PRE-FILING INVESTIGATIONS" THAT PERMIT LITIGANTS TO SHOW WHAT REASONING, AUTHORITY, LEGAL THEORY, etc. CAUSED THE LITIGANT TO BELIEVE HIS FILINGS ARE ARGUABLE OR HAVE PROBABLE MERIT UNDER THE "COMMON LAW" DEFINITION OF FRIVOLOUS — COMMON LAW DEFINITION, BECAUSE THE PLRA FAILED TO DEFINE FRIVOLOUS, THEREBY CREATING A BROAD STANDARD OF FRIVOLOUSNESS EQUATED WITH MALICIOUSNESS; 3) OMITTED THE "BAD FAITH" REQUIREMENT, WHICH ENSURED THAT FEDERAL COURTS COULD NOT IMPOSE SAU SPONTE SANCTIONS UNLESS THEY WERE "AKIN TO CONTEMPT," PRIMA

FACIE THE PLRA IS PURELY COMPENSATORY LEGISLATION ON BEHALF OF THE U.S. AS A PARTY, THE INDISPUTABLE FACTS THAT AT THE TIME OF THE PLRA AND AEDPA PRISONER FILINGS WERE MERELY PROPORTIONAL TO INCARCERATION RATES, AND TO BE MORE SPECIFIC, "from 1980 to 1996, the absolute number of claims continued to grow, nearly tripling. Of course, during the same period, the prison, during the same period, the prison population more than tripled, and thus the filing rate per prisoner actually decreas[ed] by 17%," Aref v. Lynch, 833 F.3d 242 n.6 (D.C. Cir. 2016) — SEEMS TO SUPPORT THE CLAIM OF IMPERMISSIBLE "PARTY COMPENSATION PAYABLE TO THE U.S as a party", ESPECIALLY EGREGIOUS SINCE THE U.S. TREASURY IS A "COMMON SOURCE" FOR THE PARTIES IN A CLAIM AGAINST THE GOVERNMENT. see Declaration of Independence.

* *

HEREIN, THE COURT SHOULD TAKE "JUDICIAL NOTICE" THAT PETITIONER HILL [WILL] RELY UPON A [S]TASTICAL SHOWING BASED UPON NATIONWIDE INFORMATION RELATING TO THE FILING RATE OF PRISONER CLAIMS PER PRISONER, TO SHIFT THE BURDEN OF PROOF TO THE U.S. TO SHOW REASONABLE CIRCUMSTANCES NOT RELATED TO FINANCIAL INTEREST AS A PARTY, THAT JUSTIFIES THE SEVERE [M]ETHOD OF "SYSTEMATIC DETERENT" IMPOSED BY THE PLRA AND AEDPA, INSTEAD OF THE APPARENTLY EFFECTIVE CONSTITUTIONAL SAFEGUARD OF THE "CASE BY CASE" STANDARD UTILIZED UNDER F.R.Civ.P., Rule 11. AFTER ALL, ONCE CONGRESS HAS APPROPRIATED FUNDS TO A PARTICULAR DEPARTMENT, CONGRESSIONAL CONTROL OF THOSE FUNDS, DOES CEASE; ...

4.) PLRA OMITTED THE CONSTITUTIONAL SAFEGUARD OF A "LESS STRINGENT" STANDARD APPLIED TO PRISONER CLAIMS. Both the PLRA AND AEDPA IMPOSE SANCTIONS ON PRO-SE PRISONERS FOR [N]EGLAGENT ACTS THAT IF DONE BY AN ATTORNEY ARE NOT SANCTIONABLE see 28 U.S.C. §1927()(), THEREBY HOLDING THE PRISONER (SYSTEMATICALLY) TO A MORE STRINGENT STANDARD THAN AN ATTORNEY. see In Re Pennie + Edmonds LLP, 323 F.3d 86, 90 (2d Cir. 2003); Schlaifer Nance + Co. Inc. v. Estate of Andy Warhol, 194 F.3d 323, 338 (2d Cir. 1999) (Sanctions imposed pursuant to court's inherent powers doctrine as well as 28 U.S.C. § 1927 require highly [S]pecific finding of bad faith) (citing

Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d 34, 38 (2d Cir. 1995)

8. AEDPA: The Successive Writ Bar under 28 U.S.C. § 2244 is an unconstitutional "censorship system" utilized in the Black Stagnation Model as a social contraceptive, that in effect, is a direct suspension of Habeas Corpus. It is axiomatic that habeas is a sensitive area of the First Amendment Right to Redress, and the ex parte character of the Successive Writ Bar simply cannot be justified. see Carrol v. Pres. & Com'rs of Princes Anne, 393 U.S. 175, 89 S.Ct. 347 (1968) (*183 The value of a judicial proceeding ... is substantially diluted where the process is ex parte, because the Court does not have available the fundamental instrument for judgment: an adversarial proceeding.)

ERGO, IN FASHIONING THE APPROPRIATE RELIEF HEREIN, Hill WOULD ALSO ASK THE COURT TO TAKE JUDICIAL NOTICE THAT THE VRA OMISSIONS IN QUESTION AMOUNT TO A COOPERATIVE AGREEMENT OR COMPACT APPROV[ED] BY CONGRESS THAT ASSIMILATES THE STATE LAWS, THEREBY, SUBJECTING THE AGREED UPON STATE LAW TO A FEDERAL RATHER THAN STATE CONSTRUCTION. see NYSAILA Vacation & Holiday Fund v. Waterfront Comm'n of ..., 732 F.2d 292, 297 (2d Cir. 1984) (Federal Courts are [NOT bound] by the State Court's interpretation because the cooperative agreement was an interstate compact approved by Congress and thus was a [federal law], subject to federal rather than State construction.) Hill FIRMLY ASSERTS THAT HAD THE DOJ COMPLIED WITH THE VRA REQUIREMENTS, BY PROPERLY INVESTIGATING THE MISSISSIPPI LAWS SUBMITTED TO DOJ, Hill WOULD [NOT] BE BOUND BY DOJ'S OMISSIONS OF POLITICAL JUDGMENT UNDER THE VRA — BUT ABSENT DOJ'S RATIONALE IN RECORD, Hill IS BOUND BY THOSE OMISSIONS, AND Hill NOW SEEKS EXPEDITIOUS ADMINISTRATION OF THE COURT'S BUSINESS. DATE 12/7/21

28 U.S.C. § 1746

x Russell K. Hill

Sworn and subscribed before me This 7th day of December 2021

STATE OF MISSISSIPPI
WINIFRED P. ANDERSON
NOTARY PUBLIC
Marshall County
Commission Expires
August 8, 2025
COMMISSION NUMBER 121142

x Winifred P. Anderson
NOTARY

21-49